UNITED STATES of America, Appellee,

v.

Cedric F. BOYKINS, Appellant.

UNITED STATES of America, Appellee,

v.

Kenny DAVIS, Appellant.

UNITED STATES of America, Appellee,

v.

Brian DAVIS, Appellant.

Nos. 91–1289 to 91–1291.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1992.

Decided June 9, 1992.

Rehearing and Rehearing En Banc
Denied July 15, 1992.

Darrell F. Brown, Little Rock, Ark., argued, for appellant Cedric Boykins.

Gene Worsham and Robert L. Scull, III, Little Rock, Ark., argued, for appellant Kenny Davis.

R.S. McCullough, Little Rock, Ark., argued, for appellant Brian Davis.

Terry L. Derden and Kevin Alexander, Little Rock, Ark., argued, for appellee.

Before ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Cedric F. Boykins, Kenny Davis and Brian Davis (collectively defendants) appeal from final judgments entered in the United States District Court[1] for the Eastern District of Arkansas, upon jury verdicts, finding them guilty of involvement in a cocaine conspiracy. Boykins and Kenny Davis were found guilty of conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C.A. § 846 (West Supp. 1992), attempt to possess cocaine in violation of 21 U.S.C.A. § 846 (West Supp.1992), and use of a firearm during the commission of a drug offense in violation of 18 U.S.C.A. § 924(c) (West Supp.1992). Boykins and Kenny Davis were each sentenced to a term of imprisonment totalling 270 months, 210 months on each of the possession with intent to distribute and attempt to possess counts, to be served concurrently, and 60 months on the firearm count, to be served consecutively, five years of supervised release, a fine of $50,000.00, and a special assessment of $150.00. Brian Davis was found guilty of conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C.A. § 846 (West Supp.1992) and sentenced to 168 months imprisonment, five years of supervised release, a fine of $20,000.00, and a special assessment of $50.00. For reversal, defendants argue that the district court erred in (1) allowing the in-court identification of Kenny Davis by witness Gwendolyn Smith; (2) allowing the government to use grand jury subpoenas to obtain defendants' photographs and fingerprints; (3) denying a mistrial based on prosecutorial misconduct; (4) allowing Boykins and Kenny Davis to be convicted of both conspiracy to possess and attempt to possess in violation of the double jeopardy clause; and (5) refusing to direct verdicts of acquittal or grant new trials on all charges. For the reasons discussed below, we affirm the judgments of the district court.

## BACKGROUND FACTS

This case involves a cocaine conspiracy. The primary government witness was Lareda Faye Davis (Faye Davis), the sister of two of the co-defendants. Faye Davis testified that on August 23, 1989, she stole 9 to 10 blocks of cocaine from the trunk of a Nissan Maxima that she believed belonged to Boykins. Just prior to breaking into the trunk, Faye Davis had observed Kenny Davis place a briefcase in passenger area of the car. After stealing the cocaine, Faye Davis ingested some of the cocaine with friends. Faye Davis testified that she, Jerome Jones and Willie Shaw were in Shaw's car with the cocaine when she was abducted at gunpoint from the vehicle, leaving the cocaine with Jones and Shaw. Faye Davis identified Kenny Davis and Boykins at trial as participating in this armed abduction and Faye Davis testified that the purpose was to enlist her efforts in the recovery of the cocaine which she had stolen from Boykins' car.

---

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

Shaw and Jones then hid the cocaine at Shaw's house. Gwendolyn Smith testified that her brother, Jerome Jones, lived with her and that on the evening of August 24, 1989, Faye Davis had come to her home to see Jones, but he was not home. Faye Davis testified that by this time she had told Kenny Davis and Brian Davis the truth about stealing the cocaine and had shown them where Jones lived. Smith testified that a few minutes after Faye Davis had stopped by, several armed men entered her home attempting to get their "stuff." Smith was unable to identify the armed men in a photo spread a few months after the incident, but later, she identified Kenny Davis in court as one of the armed men.[2] Faye Davis testified that she observed Kenny Davis and Boykins enter Smith's home shortly after she left.

Jones testified that following this incident he contacted the police regarding the cocaine. This information led to the execution of a search warrant at Shaw's home where 12 pounds (6 blocks) of cocaine was recovered. Jones, under the supervision of a Drug Enforcement Agency (DEA) officer and local police, tape-recorded several phone calls between himself and Brian Davis involving negotiations and instructions for the return of the cocaine. Faye Davis identified Brian Davis's voice on the tapes.

Faye Davis pled guilty to possession with intent to distribute. Shaw pled guilty to misprision of a felony. Jones was not charged. Boykins and Kenny Davis were each found guilty of conspiracy to possess cocaine with the intent to distribute, attempt to possess cocaine, and use of a firearm during the commission of a drug offense. Brian Davis was found guilty of conspiracy to possess cocaine with the intent to distribute. These appeals were filed and the cases were consolidated for the purposes of appeal.

DISCUSSION

*In–Court Identification of Kenny Davis by Gwendolyn Smith*

Smith was present when armed intruders came to her home, where her brother, Jones, also lived, looking for their "stuff" on August 24, 1989. She was shown a photo spread on November 29, 1989, which included the photograph of Kenny Davis, but was unable to identify any of the photographs as one of the armed intruders. While walking towards the courtroom on the day of trial, Smith recognized Kenny Davis as one of the armed intruders. Smith told the Assistant United States Attorney who then accompanied Smith outside the courtroom to determine which individual she had recognized. Smith and the Assistant United States Attorney walked down the hall so that Smith could confirm her identification and then Smith identified Kenny Davis at trial. Defense counsel were made aware of the circumstances surrounding Smith's identification of Kenny Davis in the courthouse and Smith was cross-examined about her prior inability to identify Kenny Davis's photograph in the photo spread and her hallway identification the day of trial.

Defendants argue that this hallway identification was an impermissibly suggestive identification procedure and therefore the in-court identification should have been disallowed. Defendants compare Smith's hallway identification of Kenny Davis to a show-up and argue that, like an inherently suggestive show-up, the reliability of Smith's in-court identification must be carefully scrutinized. *See Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Hadley*, 671 F.2d 1112 (8th Cir.1982).

The government argues that, under the totality of the circumstances, Smith's in-court identification of Kenny Davis was reliable. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The government further argues that Smith's in-court identification of Kenny Davis was reliable because Faye Davis testified that Kenny Davis was one of the men she saw entering Smith's home at the time of the intrusion.

**2.** The controversy surrounding Smith's in-court identification of Kenny Davis is discussed *infra*.

■ We hold that the district court did not err in admitting Smith's in-court identification of Kenny Davis. Smith recognized Kenny Davis without any suggestion from the government. While a line-up is certainly the preferred method of identification, a witness who spontaneously recognizes a defendant should be allowed to testify to that fact. Furthermore, proper disclosure was made to the defense and Smith was cross-examined about all of the circumstances surrounding her identification of Kenny Davis in the hallway. Therefore, the jury was able to determine the credibility of her in-court identification of Kenny Davis.

### Government's Use of Grand Jury Subpoenas

Grand jury subpoenas were issued in September 1989 for the appearance of Kenny Davis. Kenny Davis complied with the subpoenas and provided fingerprints and photographs on November 20, 1989. Defendants argue that this was improper use of grand jury subpoenas because the purpose was to aid the government's investigation. The government argues that the use of grand jury subpoenas to obtain fingerprints and photographs does not violate defendant's constitutional right against self-incrimination and is not a seizure under the Fourth Amendment.

■ Grand jury subpoenas for fingerprints and photographs do not violate the Fourth or Fifth Amendments. *See United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). This court has reaffirmed this holding in *United States v. Hutchings,* 751 F.2d 230, 234 (8th Cir.1984) (citation omitted), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985), stating that "the

subject of a subpoena has no privilege not to produce handwriting exemplars, fingerprints, or photographs." Kenny Davis's fingerprints and photograph were relevant to the grand jury's investigation and we hold that there was nothing improper about him being required to submit fingerprints and photographs.

### Mistrial Based on Prosecutorial Misconduct

Defendants claim several instances of prosecutorial misconduct. Defendants first claim that the government's questioning of Boykins about his driver's license and a Texas traffic ticket was improper and grounds for a mistrial. During cross-examination of Boykins, the government asked Boykins for his driver's license. The government asked Boykins about the length of his hair in his driver's license picture.[3] Defendants objected on Fourth Amendment grounds claiming the request to see the driver's license was an illegal seizure. The district court agreed and gave a cautionary instruction to the jury.[4] Defendants argue that the cautionary instruction was insufficient to cure the harm and that a mistrial was warranted.

The district court allowed the government to ask Boykins for his driver's license number. The government then asked Boykins about a traffic ticket he allegedly received in Texas which was in conflict with the alibi defense of Boykins and Kenny Davis. Boykins denied receiving the ticket and said that his brother often used his driver's license and visited the area in Texas where the speeding ticket was received. Outside the hearing of the jury, the government attempted to introduce Arkansas records concerning the Texas speeding ticket. The district court held the Arkansas records were insufficient to prove that Boykins had received a speeding ticket in Tex-

---

**3.** The difference between the length of Boykins' hair at the time of the alleged offense and the trial had been brought up earlier during the trial.

**4.** The district court's cautionary instruction given during trial was as follows:

Ladies and gentlemen, you will disregard any statement about what the appearance of Mr.

Boykins may have been. I can tell you, the driver's license, I looked at it, and it was made a considerable time before the incident in question, and, really, there's no way to know whether in any way it accurately reflects his appearance at the time of the events in question.

as. Defendants then asked for a mistrial because of the references to the speeding ticket in cross-examination by the government. The district court denied the motion for mistrial stating that the government had a good faith basis for asking the question, but did give a cautionary instruction.[5] Defendants claim that this instruction did not cure the harm from the discussion of the traffic ticket and that a mistrial was the appropriate remedy.

The government argues that there was no abuse of discretion by the district court in denying defendants' motions for mistrial because the government had a good faith basis for making its inquiries when the custodian of the Arkansas records was present and able to testify about the Texas ticket.

■ We hold that the district court did not abuse its discretion in denying defendants' motions for mistrial. "The grant or denial of the motion for mistrial lies within the sound discretion of the district court and may only be reversed on a showing of abuse of discretion." *United States v. Pierce*, 792 F.2d 740, 742 (8th Cir.1986) (citations omitted). The government had a good faith basis for inquiring into the speeding ticket in Texas because it had records to support its questions and the ticket was relevant because the ticket was inconsistent with the alibi defense of Boykins and Kenny Davis. The district court's cautionary instructions cured any harm from the questioning, and therefore, the district court did not abuse its discretion in denying the motions for mistrial.

■ Defendants also argue there was prosecutorial misconduct in the government's questioning of Faye Davis. The government asked Faye Davis if she knew what Boykins did for a living and she responded "I believe that he sold drugs." Following a defense objection and an in-chambers discussion between the court and the lawyers, the government decided not to pursue this line of questioning and no further reference was made to Faye Davis's

response. Defendants argue that the district court failed to declare a mistrial or to give a cautionary instruction and that the prejudice caused by this response demands a mistrial.

The government argues that it had a proper foundation for asking the question, that is, a signed statement by Faye Davis. The government argues that it had a good faith basis for asking the question and that the drastic sanction of a mistrial is not appropriate. Furthermore, the government alleges that defendants never requested a cautionary instruction or moved for mistrial when this statement was made.

We hold that the district court did not abuse its discretion in failing to declare *sua sponte* a mistrial or give a cautionary instruction because of this one response made by Faye Davis. There was only one brief response made by Faye Davis and it was never mentioned again throughout the trial. Therefore, sufficient prejudice was not created to warrant a mistrial or cautionary instruction when none was requested.

We have reviewed defendants' other allegations of prosecutorial misconduct and find them all without merit.

### Double Jeopardy

■ Boykins and Kenny Davis argue that it was double jeopardy to convict them of both conspiracy to possess and attempt to possess cocaine. Even if their convictions for both offenses are allowed, Boykins and Kenny Davis argue that they cannot be sentenced for both offenses. Each received concurrent sentences of 210 months for each offense. Defendants urge this court to adopt the reasoning of the Ninth Circuit in *United States v. Touw*, 769 F.2d 571 (9th Cir.1985) (*Touw*). In *Touw*, the Ninth Circuit held that the defendants could not be sentenced for both conspiracy to possess and attempt to possess because both charges arose from the same single attempt to buy drugs from a DEA agent. *Id.* at 574. The Ninth Circuit,

---

**5.** The following instruction was given by the district court: "The jury should not consider any allegations made by the Government that a

ticket was issued to Cedric Boykins on September 17, 1989, since there was no evidence adduced to support or prove the same."

therefore, allows conviction, but not punishment, for two crimes when the conduct arose out of the same act. *See United States v. Palafox*, 764 F.2d 558, 561–63 (9th Cir.1985) (en banc).

The government argues that the instant case is distinguishable from *Touw* because it involved multiple acts, such as the abduction of Faye Davis, breaking into Smith's home, and negotiating the return of the cocaine. Furthermore, the government argues that attempt and conspiracy have different elements and therefore are separate offenses for which double jeopardy does not apply.

Both attempt and conspiracy are offenses under 21 U.S.C.A. § 846 (West Supp.1992).[6] All courts which have reached the issue, including the Ninth Circuit, agree that a defendant may be charged and tried on both attempt and conspiracy under 21 U.S.C.A. § 846 (West Supp.1992). *See United States v. Barrett*, 933 F.2d 355, 360 (6th Cir.1991) (*Barrett*); *United States v. Savaiano*, 843 F.2d 1280, 1292 (10th Cir.) (*Savaiano*); *United States v. McQuisten*, 795 F.2d 858, 867 (9th Cir. 1986). Attempt and conspiracy contain different elements of proof and therefore meet the test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (citation omitted) (*Blockburger*) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

The more difficult question is whether a defendant can be punished for both conspiracy and attempt. We hold that such punishment does not violate double jeopardy and decline to follow the Ninth Circuit. Instead, we hold that separate sentences for convictions of conspiracy and attempt under 21 U.S.C.A. § 846 (West Supp.1992)

are lawful and agree with both the Tenth Circuit in *Savaiano*, 843 F.2d at 1293, and Second Circuit in *Barrett*, 933 F.2d at 360–61. We hold that the *Blockburger* test should be applied to determine if multiple punishments are allowed. Use of the *Blockburger* test was reaffirmed by the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 515–17, 110 S.Ct. 2084, 2089–91, 109 L.Ed.2d 548 (1990) (*Grady*). *See, United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992). The Supreme Court also reaffirmed its use to " '[protect] against multiple punishments for the same offense.' " *Grady*, 495 U.S. at 516, 110 S.Ct. at 2090, *quoting North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The *Blockburger* test focuses on the statutory elements of the offenses, not on whether the offenses involved a single course of conduct as the Ninth Circuit focuses upon. *See Barrett*, 933 F.2d at 361. In addition, we agree with the Tenth Circuit that the Ninth Circuit's standard of distinguishing between a single act for which separate sentences are not allowed and a multiple act for which separate sentences are permitted simply creates confusion concerning "what is and what is not a single course of conduct." *Savaiano*, 843 F.2d at 1292–93 (citations omitted). We hold that the *Blockburger* test should be applied at sentencing. Because attempt and conspiracy contain different elements of proof, Boykins and Kenny Davis were properly sentenced by the district court for each offense.

We have reviewed defendants' other claims, including all sufficiency of the evidence claims, and find them all without merit.

Accordingly, we affirm the judgments of the district court.

---

**6.** 21 U.S.C.A. § 846 (West Supp.1992) states "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those

prescribed for the offense, the commission of which was the object of the attempt or conspiracy."