# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3970

———————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff-Appellee,　　　 *
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　 *　District Court for the
　　　　　　　　　　　　　　　　　*　Eastern District of Missouri.
Robert B. Beltz,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Defendant-Appellant.　　 *

———————

Submitted: September 16, 2004
Filed: October 14, 2004

———————

Before MURPHY, McMILLIAN, and BENTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

Robert Beltz was convicted by a jury of attempt to manufacture methamphetamine and of possession of pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine. The district court[1] sentenced Beltz to 292 months imprisonment and five years supervised release. Beltz appeals, arguing first, that the attempt and possession charges were cumulative; second, that the district court abused its discretion in admitting testimony about his

———————

[1] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

prior participation in the production of methamphetamine; and third, that the government failed to present sufficient evidence of an attempt to manufacture.[2] We affirm.

On September 25, 2002, law enforcement officers executed a search warrant at the residence of Robert Beltz in Campbell, Missouri. The search resulted in the seizure of numerous items commonly used in the production of methamphetamine. Most were discovered in a camera-monitored workshop area located behind Beltz's garage. There in a desk later identified as belonging to Beltz, officers found 1,700 pseudoephedrine pills which had been removed from their packaging and bagged; two plastic containers, two coffee filters, and a funnel, all containing a white residue; a jar containing a liquid byproduct of methamphetamine production; scales; plastic tubing; unused coffee filters; and a coffee grinder. Beltz's wallet and a handgun registered in his name were also in the desk.

Many other items involved in methamphetamine manufacturing were found in other parts of the workshop: a microwave containing digital scales and coffee filters; another microwave with a pie plate stained with chemicals used in different stages of methamphetamine production; additional jars and funnels; a lid appearing to be the top of an acid generator; liquid fire; muriatic acid; and a container of pseudoephedrine substance of a type produced during the manufacturing process. A drained can of starting fluid and a plastic bottle apparently used as an acid generator were found in a trash barrel near the workshop. Also on the premises were tanks with a residue believed by the officers to have resulted from anhydrous ammonia; a gas mask fitted with an ammonia cartridge; and twenty one other firearms. While searching the workshop, officers noted the presence of what appeared to be a

---

[2] Beltz also would like to argue for an acceptance of responsibility reduction if his case were remanded for resentencing or a new trial. Because of our disposition of other issues we need not reach this point.

homemade exhaust system. In a search of Beltz's bedroom, police discovered $4,500 in cash.

Beltz made a number of statements during the search after he had received Miranda warnings. In response to a question about the materials in the workshop, Beltz answered that they had been used in the production of methamphetamine. He pointed out that there was no anhydrous ammonia or sodium metal on the property, but he acknowledged the presence of liquid fire and batteries. Beltz also commented on the container of liquid byproduct, stating that the substance was old and likely no longer of value in the manufacturing process. When asked about his own experience with methamphetamine, Beltz replied that he had used the drug for five years.

Beltz was charged in a superseding indictment with four offenses: possession of pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine, under 21 U.S.C. § 841(c)(2); attempt to manufacture methamphetamine, under 21 U.S.C. §§ 841(a)(1) and 846; making a firearm, under 26 U.S.C. §§ 5822 and 5861(f); and knowing possession of an unregistered firearm, under 26 U.S.C. §§ 5841 and 5861(d). Beltz unsuccessfully moved to suppress evidence, then moved for a bill of particulars and for election among counts or determination of lesser included offense. These motions were also denied, and the case proceeded to trial.

One of the witnesses called by the government was Christopher Thompson, who testified that he and Beltz had produced methamphetamine at Beltz's residence thirty to fifty times between 1997 and 2000. From photographs taken during the course of the search, Thompson identified many of the seized items as those he and Beltz had used in manufacturing the drug, including a set of pliers used by Beltz to remove lithium strips from batteries. Thompson also testified to their practice of each providing some of the ingredients necessary to produce the drug. Thompson most commonly acquired the anhydrous ammonia, and Beltz the pseudoephedrine.

A jury found Beltz guilty of possessing pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine and of attempting to manufacture methamphetamine. It acquitted him of both firearm charges. Beltz moved for a judgment of acquittal on the attempt conviction because of insufficient evidence; the motion was denied. After a sentencing hearing, Beltz was given concurrent sentences of 240 months for unlawful possession of pseudoephedrine and 292 months for attempted manufacture of methamphetamine. Beltz also received concurrent terms of supervised release, being sentenced to five years for unlawful possession of pseudoephedrine and three years for attempted manufacture of methamphetamine.

Beltz argues that the district court erred in ordering the entry of judgment for sentences on both unlawful possession of pseudoephedrine and attempted manufacture of methamphetamine. He contends that Congress did not intend to impose multiple punishments for the conduct at issue. Our review is de novo for claims of multiplicity in charging an offense. United States v. Underwood, 364 F.3d 956, 966 (8th Cir. 2004).

The Fifth Amendment provides that "No person shall...be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The double jeopardy clause protects against multiple punishments for the same offense and prevents imposition of greater punishment than authorized by Congress. Missouri v. Hunter, 459 U.S. 359, 366 (1983). One type of analysis used by the Supreme Court to ascertain the extent of punishment Congress intended in its criminal legislation is to examine the statutory elements of the offenses charged, and it concluded in Blockburger v. United States, 284 U.S. 299, 304 (1932), that multiple punishments are permitted for separate convictions when each requires an element of proof that the other does not. Our court has adopted the Blockburger test for determining whether multiple punishments are permitted. United States v. Boykins, 966 F.2d 1240, 1245 (8th Cir. 1992) (rejecting the single course of conduct test).

-4-

Beltz contends that the crime of possessing pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2), is a lesser included offense of attempting to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The imposition of multiple punishments is thus precluded he says. He claims that the elements of the possession offense are subsumed entirely within the greater crime of attempt, for which the government must prove the additional element of a personal intent to manufacture a controlled substance.

Beltz misconstrues the statutory offenses. Section 841(c)(2) requires proof of three elements: (1) the defendant was in possession of pseudoephedrine; (2) the defendant's possession of the chemical was knowing or intentional; and (3) the defendant knew or had reason to believe that the chemical would be used to manufacture a controlled substance. In contrast, §§ 841(a)(1) and 846 require proof of two separate elements: (1) the defendant intended to manufacture methamphetamine; and (2) the defendant engaged in conduct constituting a substantial step toward the production of the drug. United States v. Montayne, 996 F.2d 190, 191 (8th Cir. 1993) (en banc), cert. denied, 519 U.S. 938 (1996). Since the crime of attempt does not require the possession of pseudoephedrine, and the crime of possession does not require an intent to manufacture methamphetamine, possession is not a lesser included offense of attempt. The district court did not err in imposing sentences for both offenses. Boykins, 966 F.2d at 1245.

The statutory provisions under which Beltz was convicted differ from those in which Congress has explicitly provided for greater punishment upon proof of a fact which aggravates a core offense. For example, manufacturing methamphetamine under 21 U.S.C. § 841(a)(1) is a lesser included offense of manufacturing it within 1000 feet of a school under 21 U.S.C. § 860. United States v. Underwood, 364 F.3d 956, 967 (8th Cir. 2004). In fact one of the statutory elements of § 860 requires that § 841(a)(1) have been violated. Beltz lacks support for his argument that the

structure of the Comprehensive Drug Abuse Prevention and Control Act means that Congress intended only "discrete and incremental punishments." Unlawful possession and attempted manufacture are distinct offenses, with each requiring proof of an element the other does not. Multiple punishment in this case does not contravene the intent of Congress or violate the double jeopardy clause.

Beltz next argues that the district court erred in admitting Christopher Thompson's testimony about Beltz's prior involvement in production of methamphetamine at his residence. Beltz contends that this was improperly admitted under Federal Rule of Evidence 404(b) as proof of his propensity to commit future criminal acts. We review a district court's evidentiary rulings for abuse of discretion. United States v. Buffalo, 358 F.3d 519, 521 (8th Cir. 2004).

Rule 404(b) permits evidence of other crimes when offered not to prove criminal propensity, but "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Evidence that is relevant to the crime charged is not other crimes evidence. United States v. Aranda, 963 F.2d 211, 213-14 (8th Cir. 1992). Since Thompson's testimony was probative of the crime of attempt to manufacture methamphetamine, Rule 404(b) was no bar to its admission. In order to prove that Beltz had taken a substantial step toward the production of methamphetamine, the government sought to demonstrate a connection between him and the seized materials. Thompson's testimony as to Beltz's prior use of those materials made this connection and was thus direct evidence of a charged offense. Thompson's testimony would also have been admissible as other crimes evidence, for Beltz's prior participation in the production of methamphetamine at his residence is relevant to a material issue in the case—his present knowledge and intent in possessing pseudoephedrine and manufacturing equipment. See United States v. Hawthorne, 235 F.3d 400, 404 (8th Cir. 2004). The district court did not abuse its discretion in allowing Thompson's testimony.

Beltz contends finally that the district court erred by not granting his motion for a judgment of acquittal on the basis of insufficient evidence to support the jury's finding of attempt. Our review of the sufficiency of evidence is limited. "We will reverse a denial of a motion for acquittal only if, after viewing the evidence in the light most favorable to the jury's verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence, no construction of the evidence will support the jury's verdict." United States v. Hollingsworth, 257 F.3d 871, 878 (8th Cir. 2001), cert. denied, 534 U.S. 1100 (2002); United States v. Davis, 785 F.2d 610, 619 (8th Cir.1986) ("We will...reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt.").

In order to prove an attempt to manufacture methamphetamine, the government was required to demonstrate that Beltz intentionally engaged in conduct constituting a substantial step toward the production of methamphetamine. Hollingsworth, 257 F.3d at 878. Considering the evidence presented at trial, a reasonable jury could have found Beltz guilty of attempting to produce methamphetamine beyond a reasonable doubt. See, e.g., id. at 878-79 (sufficient evidence of attempt to manufacture methamphetamine where defendant purchased a single precursor chemical while residing with others at a residence containing a nonoperational methamphetamine lab); United States v. Mazzella, 768 F.2d 235, 240 (8th Cir. 1985), cert. denied, 474 U.S. 1006 (1985) (finding a "substantial step" toward production where defendant ordered and received the necessary equipment and chemicals); United States v. Smith, 264 F.3d 1012, 1016-17 (10th Cir. 2001) (defendant "need not possess a full 'working lab' to be convicted of attempting to manufacture methamphetamine," nor actually possess "all the needed precursor chemicals").

The search of Beltz's residence revealed a large number of separated pseudoephedrine tablets, an extensive amount of equipment used in the manufacture of methamphetamine, substances resulting from various stages of production of the drug, and a substantial amount of money and firearms. During the search, Beltz

-7-

conceded that the equipment had been used to produce methamphetamine and demonstrated knowledge of the manufacturing process. Thompson's testimony further demonstrated Beltz's ability to manufacture the drug, connected Beltz to the equipment seized during the search, and indicated that Beltz could obtain access to those chemicals not located on the property at the time of his arrest. Since it cannot be said that "no construction of th[is] evidence will support the jury's verdict," Hollingsworth, 257 F.3d at 878, the district court did not err in denying Beltz motion for a judgment of acquittal on the attempt charge.

For these reasons the judgment of the district court is affirmed.

_____