# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3237

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Demario A. Howard, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 21, 2005
Filed: October 31, 2005

_____

Before MURPHY, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Following a jury trial, Demario A. Howard was convicted of one count of possession with intent to distribute a controlled substance (marijuana), one count of attempted possession with intent to distribute a controlled substance (marijuana), and one count of brandishing a firearm in furtherance of a drug trafficking crime. Howard's argument on appeal is that the evidence was insufficient to support his convictions, and thus the district court[1] erred in denying his motion for acquittal. We affirm.

_____

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

# BACKGROUND

On December 6, 2002, Jo Ann Howard called Roto Rooter to work on a clogged sewer drain at the house she shared with her son, Demario, in Little Rock, Arkansas. Ricky Lee Green, a Roto Rooter employee, arrived at the Howard residence to do the job. The sewer drain was in the crawlspace, which was secured with a door and padlock. When Green opened the door to the crawlspace, he smelled an overwhelming odor of marijuana. He surveyed the crawlspace and found a green duffel bag containing a large amount of marijuana.

Green called his supervisor, Michael Smart, and told Smart about what he had discovered. Smart and Green decided at that time to remove some of the marijuana from the duffel bag, so Green took two one-gallon bags filled with marijuana from the duffel bag. Later, the two returned to the Howard residence under the guise of retrieving a flashlight from the crawlspace, and stole the duffel bag and its remaining contents. They later inventoried the contents of the bag, which included three additional gallon-size bags filled with marijuana, a digital scale, and approximately $17,000 in cash. Smart and Green sold the marijuana to an associate and split the money.

Subsequently, Roto Rooter received telephone calls from Howard impersonating a police officer, and claiming to be investigating property theft from Howard's residence. He requested the name and telephone number of employees who performed the plumbing work at that address, and was provided with Smart's telephone number. Howard then called Smart, again pretending to be an officer investigating a theft. Shortly thereafter, and this time not under the pretense of any authority, Howard called Smart back and told Smart that he knew Smart and Green had taken his money and marijuana. Smart denied any knowledge of the matter, and told Howard he would speak with Green about it. Howard gave Smart his telephone number so that Smart could return the call. Apparently rattled by Howard, Smart

contacted the Drug Enforcement Administration (DEA). The DEA decided to set up a "reverse sting," in which Howard would meet Smart to retrieve his money and drugs under observation of DEA agents, so that the agents could then apprehend Howard.

Smart and Howard settled on a meeting at Denny's, where Smart was to give Howard the key to the trunk of a car that was supposed to contain the drugs and money. Howard arrived at the Denny's and asked Smart to accompany him to the bathroom so that Howard could check for a wire. Smart refused. Howard then received a call on his cellular phone which seemed to indicate he should leave Denny's.[2] Instead of leaving, Howard ended his phone call, and pulled up his sweatshirt to reveal a handgun held in his pants. When Smart asked Howard why he brought a gun, Howard told him it was for protection. Howard then took the key and left the restaurant to get the duffel bag from the trunk. When Howard tried to open the trunk, a Little Rock narcotics detective, Vincent Lucio, identified himself and ordered Howard to the ground. Howard fled until he was tackled by DEA Agent Colin Hill. When agents retraced Howard's path, they found a pager, his cellular phone, and a gun registered to him. Howard was wearing a bulletproof vest at the time of his arrest.

On June 4, 2003, Howard was charged in district court with the offenses of possession with intent to distribute marijuana, in violation of 18 U.S.C. § 841(a)(1); attempted possession with intent to distribute marijuana, in violation of 18 U.S.C. §§ 841(a)(1) and 846; and brandishing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). He went to trial on March 8, 2004, and following two days of testimony, the jury returned guilty verdicts on all counts. Howard was sentenced to concurrent terms of fifteen months of imprisonment on each

---

[2] According to Smart's testimony, Howard said to the caller, "What do you mean I need to get out of here?" About the time of this telephone call, agents observed a vehicle circling the Denny's parking lot, and opined that the vehicle was conducting counter-surveillance. The vehicle was never found.

of the drug convictions, and a mandatory consecutive term of eighty-four months for the gun crime, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). This appeal followed.

## ANALYSIS

Howard attacks the sufficiency of the evidence on each count. In considering the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the government, granting it all reasonable inferences supported by the evidence. United States v. Mack, 343 F.3d 929, 933 (8th Cir. 2003). We may only reverse the district court's denial of a defendant's motion for acquittal if reasonably minded jurors must have harbored a doubt regarding an essential element of the charged offense. United States v. Espinosa, 300 F.3d 981, 983 (8th Cir. 2002).

To convict Howard of possession of marijuana with intent to distribute, the government was required to prove two elements: that Howard knowingly possessed marijuana, and that he had the intent to distribute it. 21 U.S.C. § 841(a)(1); United States v. Barrow, 287 F.3d 733, 736 (8th Cir. 2002). "Possession of drugs may be demonstrated by evidence of either actual or constructive possession." United States v. Chauncey, 420 F.3d 864, 872 (8th Cir. 2005). Constructive possession "requires knowledge of an object, the ability to control it, and the intent to do so." United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003).

The evidence in support of Howard's conviction for possession with intent to distribute consisted of testimony from both Ricky Green and Michael Smart indicating that they had come upon a large duffel bag filled with marijuana while performing plumbing work in a crawlspace under Howard's house. Although there was no direct evidence personally linking Howard to the duffel bag, it was under his house, and he admitted he regularly kept property in the locked crawlspace. Moreover, Smart testified that Howard had called him seeking return of the money and marijuana Smart had stolen from the bag. Thus, in our view, a jury could reasonably find Howard to

be in constructive possession of the bag on or about December 6, 2002, the day Green and Smart stole it.

The government also presented expert testimony from Arkansas State Police Officer Don Sanders, who stated that the amount of drugs involved–enough to fill five one-gallon baggies–was more than a personal use amount and was consistent with distribution. This officer further testified that items in the duffel bag, such as the digital scale and the large amount of cash, and items Howard admitted he owned, such as his gun and his bulletproof vest, were common tools of the drug trade. Thus, we find no error in the jury's determination that Howard possessed marijuana on or about December 6, 2002, with the intent to distribute.

Howard was also convicted of attempted possession of marijuana with the intent to distribute. In order to sustain this conviction, there must be proof that Howard intended to possess marijuana with the further intent to distribute it, and that Howard took a substantial step toward that end. See United States v. Beltz, 385 F.3d 1158, 1162 (8th Cir. 2004) (explaining the elements of an attempted controlled substance violation). Howard's conviction on this charge is supported by the evidence surrounding his December 10, 2002 endeavor to retrieve the contents of his duffel bag from Smart during the reverse sting. Smart led Howard to believe that he would return a portion of drugs and money to Howard. Howard brought a gun and wore a bulletproof vest to that meeting. Thus, the jury's determination that Howard attempted to regain possession of marijuana with the intent to distribute it is not an unreasonable one.

Lastly, Howard attacks his conviction for brandishing a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A). The government asserts that Howard was properly convicted of this offense because Howard pulled up his shirt with the intent to show Smart his gun during Howard's attempt to retrieve the contents of the duffel bag. Howard responds that: (1) he was not guilty of the underlying drug

offense and therefore cannot be guilty of brandishing a firearm in furtherance of it; and (2) Smart was not a credible witness. His first contention is without merit, and his second would require us to undertake a credibility determination, which is typically a matter reserved for the factfinder. United States v. Shelton, 36 F.3d 52, 53 (8th Cir. 1994) (per curiam). Thus, we find no basis for reversal of this conviction.

## CONCLUSION

To accept Howard's appellate argument that the evidence was insufficient to convict him of any of the charged offenses, this court would necessarily engage in weighing and evaluating the credibility of the government's witnesses vis-a-vis his own testimony. This is typically beyond the scope of our review when considering the denial of a motion for acquittal, and we thus affirm the district court.[3]

_____

[3]Neither Smart nor Green appear to have been charged with any crime resulting from their theft of Howard's property or the possession or sale of the marijuana. Although at trial the Assistant United States Attorney intimated that neither had been granted immunity from prosecution and may be later charged, nothing indicates that either has been held to answer for their violations of the law.