# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1798

_____

United States of America,          *
                                 *
          Appellee,       *
                                 *   Appeal from the United States
       v.             *   District Court for the
                                 *   District of Nebraska.
Valentin Cuevas-Arrendondo,    *
                                 *
          Appellant.     *

_____

Submitted: October 16, 2006
Filed: December 4, 2006

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Valentin Cuevas-Arrendondo (Cuevas-Arrendondo) was convicted of aiding and abetting possession with intent to distribute methamphetamine and cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), and being an alien in possession of a firearm, in violation 18 U.S.C. § 922(g)(5)(A). The district court[1] sentenced Cuevas-Arrendondo to 108 months' imprisonment. Cuevas-Arrendondo appeals, challenging the sufficiency of the evidence and an enhancement for obstruction of justice. We affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

## I.  BACKGROUND

Fremont (Nebraska) Police Officer Stuart Nadgwick (Officer Nadgwick) received information from an informant about the informant's methamphetamine supplier.  The informant told Officer Nadgwick he bought methamphetamine from two Hispanic males, one called Julio, whose real name is Samuel Soto-Lopez (Soto-Lopez), and another nicknamed Kill Dog.  The informant also told Officer Nadgwick (1) the two men lived in a trailer with a peach-colored front door in Beemer, Nebraska; (2) drugs were kept in a safe inside a backpack in the bedroom; (3) there were firearms inside the trailer; and (4) he believed Soto-Lopez was on probation for a driving offense.

Officer Nadgwick and Nebraska State Trooper Paul Smoot (Trooper Smoot) drove to the trailer park in Beemer and observed a Hispanic male, fitting Soto-Lopez's description, standing outside a trailer with a peach-colored front door.  The officers obtained a photograph of Soto-Lopez from the Beemer Police Department and concluded the man they saw at the trailer park was Soto-Lopez.  Officer Nadgwick requested the assistance of Soto-Lopez's probation officer, Laurie Hartlett (Hartlett), and an interpreter, Maria Schinstock (Schinstock).

As Officer Nadgwick, Trooper Smoot, Hartlett, and Schinstock approached the trailer, a vehicle backed away from the trailer.  The officers approached the vehicle with their badges displayed.  The driver identified himself as Samuel Soto-Lopez. The passenger identified himself as Javier Pizano, but later admitted his name was Valentin Cuevas-Arrendondo.  Soto-Lopez initially said he did not live at the trailer, but eventually told the officers he stayed at the trailer with another resident.

Trooper Smoot and Schinstock each asked Cuevas-Arrendondo if the trailer was his "casa," and Cuevas-Arrendondo responded, "Casa in West Point." Trooper Smoot then asked Cuevas-Arrendondo in English if he had the keys for the trailer.  Cuevas-Arrendondo reached into his right front pocket and removed the keys.

Officer Nadgwick opened the front door with the key provided by Cuevas-Arrendondo, and used the same key to unlock the west bedroom door.  In the bedroom, Officer Nadgwick observed a 12-gauge shotgun on the wall and a blue backpack in an open closet.  The backpack held a red Sentry safe, which contained a digital scale, a certificate of title for the vehicle Soto-Lopez had been driving, and a black stocking cap.  The black stocking cap contained another digital scale, a black billfold, four small bags containing a total of 187.63 grams[2] of methamphetamine, and a bag containing 81.26 grams of cocaine.  The billfold contained several pieces of Cuevas-Arrendondo's identification including his birth certificate, Mexican voter photo card, construction company photo identification card, and a pay receipt.  In the bedroom, the officers also found a .38-caliber revolver and a payment book in the name of Javier Pizano.

In the living room of the trailer, the officers found two boxes of 12-gauge shotgun shells and a notebook with the name "Matas Perros" written on the front.  Officer Nadgwick observed a "Matas Perros" tattoo on Cuevas-Arrendondo's right arm.  Schinstock translated Matas Perros to mean "kill dog."

Cuevas-Arrendondo was charged with possession with intent to distribute 50 grams or more but less than 500 grams of methamphetamine, possession with intent to distribute less than 500 grams of cocaine, and being an alien in possession of a firearm.  At trial, the parties stipulated to the following facts: (1) the quantities of the controlled substances, (2) Valentin Cuevas-Arrendondo and Javier Pizano is the same person, (3) Cuevas-Arrendondo is an illegal alien, and (4) the firearms found in the trailer had been shipped in interstate commerce.

---

[2]The individual bags contained 55.78 grams, 11.8 grams, 1.04 grams, and 119.01 grams, respectively.

Officer Nadgwick testified concerning the events leading to Cuevas-Arrendondo's arrest and the discovery of contraband in the trailer. Officer Nadgwick also testified that in his experience, the quantity of drugs found indicated an intent to distribute because (1) the 81.2 grams of cocaine had a value of $100 per gram, (2) the quantity of methamphetamine (119.01 grams) was consistent with a distributor, and (3) the smaller packages containing 55.78 grams, 11.8 grams, and 1.04 grams of methamphetamine were consistent with distribution packages. Trooper Smoot, Hartlett, and Schinstock gave similar testimonies.

Cuevas-Arrendondo took the stand in his own defense. Cuevas-Arrendondo testified (1) he lived in West Point; (2) he never lived in Beemer; (3) on the day of his arrest, he had been in the living room of the trailer; (4) he planned to move in with Soto-Lopez; (5) Soto-Lopez handed him the keys as he left the trailer to return to West Point; (6) he did not know the bedroom door was locked; (7) he did not put his billfold in the safe; (8) he did not give his billfold to Soto-Lopez; (9) he used the name Javier Pizano and bought documents with that name for employment purposes; (10) he believed the officers put the billfold in the safe; and (11) he lied to his employer about his name and social security number.

The jury returned a guilty verdict on all three counts. The presentence investigation report (PSR) recommended an enhancement for obstruction of justice, pursuant to section 3C1.1 of the United States Sentencing Guidelines (Guidelines), based on Cuevas-Arrendondo's trial testimony. At sentencing, the district court denied Cuevas-Arrendondo's objection to the enhancement, indicating while under oath, Cuevas-Arrendondo denied any connection with the drugs and gave "a rather preposterous answer" when questioned about how his billfold got into the safe. The district court applied the two-level enhancement and sentenced Cuevas-Arrendondo to 108 months' imprisonment followed by four years' supervised release. This appeal followed.

-4-

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Cuevas-Arrendondo argues the government failed to meet its burden of proving the elements of the charged offenses because Cuevas-Arrendondo's presence at the trailer and his possession of keys to the trailer were insufficient to prove he possessed the drugs and firearms the officers found in the trailer. We review de novo the sufficiency of the evidence to sustain a conviction. United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002). In reviewing the sufficiency of the evidence, we look at the evidence in the light most favorable to the jury verdict and accept all reasonable inferences tending to support the verdict. Id.

To convict Cuevas-Arrendondo for possession of methamphetamine and cocaine with intent to distribute, the government had to prove two elements: Cuevas-Arrendondo knowingly possessed methamphetamine and cocaine, and he intended to distribute it. See United States v. Howard, 427 F.3d 554, 557 (8th Cir. 2005). The first element can be proven by either actual or constructive possession. Id. "Constructive possession requires knowledge of an object, the ability to control it, and the intent to do so." Id. (internal quotation omitted). Our court consistently has held the holder of a key to a dwelling has constructive possession over the contents therein. United States v. Gaona-Lopez, 408 F.3d 500, 505 (8th Cir. 2005) (citing United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989)). As to the second element, "[a] large quantity of drugs, standing alone, is sufficient evidence" of intent to distribute. United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004).

Cuevas-Arrendondo possessed a key that unlocked the front door of the trailer. The officers found words written on a notebook in the living room area of the trailer that matched the "Matas Perros" tattoo on Cuevas-Arrendondo's right arm, which in turn matched Cuevas-Arrendondo's nickname, Kill Dog. The officers opened the locked bedroom using Cuevas-Arrendondo's key. Inside the bedroom, the officers found a 12-gauge shotgun, a .38-caliber revolver, and a safe containing Cuevas-

Arrendondo's billfold, birth certificate, and other identifying paperwork, as well as several bags holding more than 187 grams of methamphetamine and more than 80 grams of cocaine. The bagged drugs were weighted and packaged in a manner consistent with distribution. Viewing the evidence in the light most favorable to the jury verdict, we conclude the evidence was sufficient to prove the elements of the charged offenses.

### B.    Obstruction of Justice Sentencing Enhancement

Cuevas-Arrendondo also challenges the district court's assessment of a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. "We review for clear error a district court's factual findings underlying an obstruction of justice enhancement, and we review de novo its construction and application of the Guidelines." United States v. St. James, 415 F.3d 800, 805 (8th Cir. 2005). "A defendant is subject to an enhancement under U.S.S.G. § 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." United States v. Mendoza-Gonzalez, 363 F.3d 788, 796 (8th Cir. 2004). If the defendant objects to an obstruction of justice enhancement based on perjury, the district court must make findings that the defendant willfully gave material false testimony. Id.

Relying on its first-hand knowledge of the trial testimony, the district court denied Cuevas-Arrendondo's objection to the obstruction of justice enhancement, concluding Cuevas-Arrendondo provided patently untrue answers, which he knew were untrue when given. The district court noted, despite the abundance of evidence of Cuevas-Arrendondo's involvement in drug sales, Cuevas-Arrendondo denied, under oath, any connection with the drugs. The district court specifically recounted Cuevas-Arrendondo's testimony that police officers must have put his billfold in the locked safe, calling the testimony "rather preposterous." Finding no error in the district court's determination Cuevas-Arrendondo perjured himself, we conclude the district court properly applied the obstruction of justice enhancement.

## III. CONCLUSION

For the reasons stated, we affirm Cuevas-Arrendondo's conviction and sentence.

_____