# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2435

_____

United States of America,           *
          *
      Appellee,          *
          *   Appeal from the United States
    v.             *   District Court for the
          *   District of Nebraska.
Julio Valera-Ramirez, also known    *
as Roberto,          *
          *
      Appellant.        *

_____

Submitted: April 9, 2007
Filed: July 6, 2007

_____

Before WOLLMAN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Julio Valera-Ramirez was convicted of conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846, and possessing with intent to distribute methamphetamine, in violation of §§ 841(a)(1) and (b)(1). The district court[1] sentenced him to 180 months' imprisonment. Valera-Ramirez appeals from his convictions, contesting the sufficiency of the evidence. We affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

I.

On March 30, 2005, Trooper Ryan Hayes of the Nebraska State Patrol, traveling westbound on Interstate 80, noticed a pick-up truck that lacked a front license plate, as required by Nebraska law. He followed the truck and, after a registration check indicated that there was no registration for the truck on file, initiated a traffic stop.

There were two occupants in the vehicle: the driver, Valera-Ramirez, and the passenger, Alberto Lizarro-Castro. The two men handed Hayes their Mexican voter registration cards as well as the rental agreement for the truck. Lizarro-Castro told Hayes that they were coming back from Denver, where they had spent a week painting a house. Hayes noticed that the rental agreement stated that the truck had been due back two days earlier and that it was authorized to be driven "en route to MN." The agreement also stated that the vehicle had been rented to a Brenda Medina and that Valera-Ramirez was one of the authorized drivers.

The men acknowledged that they were in the United States illegally, and were arrested. Their vehicle was taken to an Immigration and Customs Enforcement (ICE) office. At the ICE office, a drug-sniffing dog alerted to the area underneath the steering column. When the dog's handler reached under the steering column, he discovered a cylindrical package about one foot long and wrapped in electrical tape. In the middle of this package was a white crystal substance later determined to be methamphetamine. Hayes noticed that there were bolts holding the dash together that appeared tooled or scarred in a manner consistent with their recent removal. Because they lacked the tools necessary to dismantle the area under the steering column and investigate further, law enforcement agents towed the truck to a nearby auto dealership. At the dealership, mechanics removed the impact bar, which contained seven additional packages of methamphetamine. The methamphetamine collected from the vehicle weighed a total of 2.44 pounds and had a value in excess of $35,000,

which could be increased by diluting the methamphetamine and breaking it down into smaller packages for resale.

At trial, Medina, the woman who had rented the truck, testified that her husband had asked her to rent the vehicle for some friends of his. Valera-Ramirez, Medina's husband, and an unidentified man accompanied her to the rental company. When she asked her husband's friends whether they wanted a small car, the unidentified man told her that they would be needing a larger vehicle. At the rental counter, this other man also stated that Valera-Ramirez would be the driver and that they would be going to Minnesota.

The jury also heard testimony from a Nebraska state trooper regarding the modus operandi of drug couriers. He explained that drug suppliers utilize drug couriers, who rent vehicles that are later loaded with narcotics. The drug courier then drives the narcotics-laden vehicle to another location, sometimes making deliveries and sometimes bringing the vehicle to a location where drugs that have been more securely stowed can be removed.

## II.

Valera-Ramirez argues that the evidence was insufficient to prove that he had possessed the methamphetamine or that he had conspired with anyone to distribute it. We disagree.

Viewing the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the verdict, United States v. Barajas, 474 F.3d 1023, 1025 (8th Cir. 2007), there was sufficient evidence that Valera-Ramirez possessed the drugs and conspired with others to distribute them. First, there was sufficient evidence that Valera-Ramirez had constructive possession of the drugs. To establish constructive possession, the government was required to prove that Valera-

Ramirez had "knowledge and 'ownership, dominion, or control over the contraband itself, or dominion over the [vehicle] in which the contraband [was] concealed.'" United States v. Flores, 362 F.3d 1030, 1036 (8th Cir. 2004) (quoting Ortega v. United States, 270 F.3d 540, 545 (8th Cir. 2001)) (first alteration in the original). The fact that Valera-Ramirez was the driver and an authorized operator of the vehicle in which the methamphetamine was found suffices to establish his control over the drugs. See Flores, 362 F.3d at 1036 (the fact that the defendant was the driver of the car in which drugs were found was enough to establish his control over those drugs). As for knowledge, in addition to the aforementioned evidence, there was testimony that Valera-Ramirez was present when the pick-up truck was rented and that he had heard another man remark that a larger vehicle was needed. Moreover, the events in this case were consonant with the drug courier modus operandi described by the trooper. Collectively, this evidence was sufficient to establish that Valera-Ramirez was a drug courier who knew that a large quantity of drugs had been stashed in his rental vehicle.[2] This evidence also suffices to establish that he had conspired with others.[3]

The convictions are affirmed.

_____

---

[2]Valera-Ramirez points out that there was no information regarding the vehicle's rental history, apparently attempting to imply that the drugs could have been stashed by someone unconnected to Valera-Ramirez who had rented the vehicle previously. In light of the aforementioned evidence and considering the low probability that an individual would rent a car, load it with valuable contraband, and then return it to the rental company, the jury could reasonably have rejected this hypothesis.

[3]That this conspiracy was directed toward distribution can be inferred by the large quantity of drugs involved. See United States v. Billingsley, 160 F.3d 502, 506 (8th Cir. 1998) (remarking that a large quantity of drugs is circumstantial evidence of an intent to distribute).