# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1755

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Fredrick Robertson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 10, 2007
Filed: March 7, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Fredrick Robertson was convicted on one count of knowingly possessing with the intent to distribute more than 100 kilograms of marijuana and of aiding and abetting the possession of more than 100 kilograms of marijuana, violations of 21 U.S.C. § 841 and 18 U.S.C. § 2.  Robertson was convicted on a second count of using $1,327.00 to commit or facilitate the offense charged in the first count.  The district court[1] imposed upon Robertson a four-level leadership role enhancement.  Robertson

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

contends on appeal that the evidence was insufficient to convict him and that the district court erred in applying the role enhancement. We affirm.

I.

In November 2005, Robertson had been in contact with Shawn Tull about transporting marijuana. Tull approached Charles Bowers about making some money. Bowers agreed, and the two went to the St. Paul airport to pick up Robertson, who gave Tull an envelope full of cash and told him to acquire a large vehicle for transporting marijuana. Robertson had previously told Tull to find two Caucasian women to drive the vehicle back from Arizona, and Tull in turn asked Bowers to find them. Robertson promised that he would provide the money to pay each woman $1,500. Bowers and Tull employed a woman to buy a Chevy Astro van. Robertson did not approve of the vehicle, however, so they returned it and bought a Suburban. Bowers found two women to drive the vehicle, Carin Philpot and Anna Lindquist. Bowers, Tull, Philpot, and Lindquist drove the Suburban to Tucson, Arizona, where they again met with Robertson. Robertson took the Suburban and returned it later loaded with 309.8 kilograms (682.9 pounds) of marijuana. Robertson also returned with a Chevy Trailblazer in which he, Tull, and Bowers began the trip, while Philpot and Lindquist drove the Suburban. On the trip to Tucson, the Suburban had been pulled over by police, so Robertson directed that they take a different route back to Minnesota. Robertson was also concerned that the Suburban had mechanical problems, so he tried to rent a U-Haul trailer for the Trailblazer in case the Suburban broke down along the way. He was unable to do so in Tucson, but he arranged en route to rent one in Lincoln, Nebraska. Before leaving Tucson, Robertson provided money for food and gas for the women. On the drive to Minnesota, the occupants in the vehicles communicated by cell phone. Robertson directed when they were to stop and which route to take. Robertson discussed taking the marijuana to Philadelphia, but since the women were already thinking about exiting the venture, he reinstated Minnesota as the destination. At one point, Robertson ordered Bowers to relieve the

women by driving the Suburban for a time. Across Nebraska, the Trailblazer was in the lead, driving about ten miles per hour below the posted speed limit and being passed by every vehicle except the Suburban, a fact that attracted the Nebraska State Patrol's attention. When a patrol officer pulled his car alongside of and looked into the Trailblazer, Robertson ordered the Suburban to continue on while the Trailblazer exited the interstate. Both vehicles were stopped for minor traffic offenses, the drugs were discovered, and all five participants were arrested.

## II.

Robertson argues that there was insufficient evidence to support a finding that he possessed the drugs. We review a sufficiency of the evidence challenge *de novo*, but we draw all reasonable inferences in favor of the state, and we view all the evidence in the light most favorable to upholding the verdict. United States v. Flores, 474 F.3d 1100, 1105 (8th Cir. 2007). "We will reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." Id. (internal quotations omitted, alteration in original).

Anyone who knowingly possesses with the intent to distribute more than 100 kilograms of marijuana is punishable by at least five and no more than forty years' imprisonment. 21 U.S.C. § 841(a), (b)(1)(B). Knowing possession can be either actual or constructive. United States v. Cuevas-Arrendondo, 469 F.3d 712, 715 (8th Cir. 2006). The evidence was sufficient to enable a jury to reasonably conclude that Robertson actually possessed the marijuana. Upon the group's arrival in Arizona, Robertson took the Suburban away empty and, when he returned, the Suburban was filled with the marijuana.

There is also sufficient evidence from which a jury could reasonably conclude that Robertson constructively possessed the marijuana by controlling the Suburban. To constructively possess contraband, the defendant must know of it and have the

-3-

intent and ability to exercise control over it or the place where it is kept. <u>United States v. Valera-Ramirez</u>, 491 F.3d 775, 777 (8th Cir. 2007); <u>Cuevas-Arrendondo</u>, 469 F.3d at 715. Robertson and Tull were the first two of the five participants to join the scheme, and Robertson is the one who financed it, which included providing the money to buy the Suburban. In addition to obtaining the marijuana and arranging for it to be placed in the Suburban, Robertson directed who rode in and drove the Suburban, when it should stop, and what route it should take back to Minnesota. It was he who ordered the Suburban to continue on after the Nebraska officer became interested in the caravan, and it was he who pulled off the interstate.

Also sufficient is the evidence from which a jury could reasonably conclude that Robertson aided, counseled, commanded, or induced other participants to possess the marijuana. A person is liable as a principal if he "aids, abets, counsels, commands, induces or procures" another to commit a federal crime, or if he willfully causes another person to commit a federal offense. 18 U.S.C. § 2. To convict Robertson of aiding and abetting, the government was required to prove that he associated himself with the criminal enterprise, that he wanted it to succeed, and that he took actions to help it succeed. <u>United States v. Castillo</u>, 171 F.3d 1163, 1166 (8th Cir. 1999). He associated himself with the enterprise by flying to Minnesota to be involved with it. He demonstrated his desire that the enterprise succeed in transporting the drugs by financing the operation, traveling separately to Arizona to meet the other participants, acquiring the actual drugs to be transported, choosing the best route back to Minnesota, and driving one of the vehicles back to Minnesota. Thus, the evidence is more than sufficient to support a finding that Robertson exercised control over the marijuana, the Suburban in which the marijuana was transported, and the persons who actually drove the Suburban.

III.

Robertson also argues that the district court erred by enhancing his offense level by four levels for a leadership role in the offense. We review a district court's application of the guidelines *de novo* and its factual findings for clear error. United States v. Abdul-Aziz, 486 F.3d 471, 478 (8th Cir. 2007). "We reverse the district court's findings only if we have a definite and firm conviction that a mistake has been made." United States v. Garcia, 512 F.3d 1004, 1005 (8th Cir. 2008) (internal quotation omitted).

A defendant's offense level must be increased by four levels if he was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." United States Sentencing Guidelines (U.S.S.G.) § 3B1.1(a). In finding a defendant to be an organizer or leader, the court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Garcia, 512 F.3d at 1005 (quoting U.S.S.G. § 3B1.1 cmt. n.4). A district court may find facts for the purpose of applying guideline enhancements as long as it understands that the guidelines are advisory. United States v. High Elk, 442 F.3d 622, 626 (8th Cir. 2006).

From the facts detailed above, it is clear that Robertson exercised decision-making authority over both the broad outline and the specific details of a scheme to transport more than 100 kilograms of marijuana from Arizona to Minnesota. It is

reasonable to infer that none of the other known participants had or exercised authority over Robertson.  Accordingly, the district court did not err by finding that Robertson played a leadership role in the offense.

The judgment is affirmed.

_____