# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4102

_____

United States of America,     *

        Appellee,     *

v.     *

Nicole Tipton,     *

        Appellant.     *

_____

No. 06-4134

_____

United States of America,     *

        Appellee,     *

v.     *

Sadik Seferi,     *

        Appellant.     *

Appeals from the United States
District Court for the
Northern District of Iowa.

_____

Submitted: October 16, 2007
Filed: March 6, 2008

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sadik Seferi and Nicole Tipton were convicted of hiring, harboring, and conspiring to hire and harbor unlawful aliens working at a restaurant owned by Tipton. The district court[1] sentenced Seferi to 30 months' imprisonment and Tipton to 27 months' imprisonment. Seferi and Tipton argue on appeal that there was insufficient evidence to support their convictions. Tipton also contends that the district court erred at sentencing when it calculated the advisory guidelines range. We affirm the judgments of the district court.

I.

We recite the evidence presented at trial in a light most favorable to the verdict. According to this evidence, Tipton purchased The Galley restaurant in Vinton, Iowa, on June 2, 2005. Tipton hired, supervised, and paid the wait staff. Seferi hired, supervised, and paid the kitchen staff. Tipton and Seferi split the restaurant's profits equally.

On March 6, 2006, acting on a tip from local police, agents of the Bureau of Immigration and Customs Enforcement (ICE) executed search warrants at The Galley and at an apartment used to house Galley workers. They discovered evidence that six undocumented aliens had worked in the restaurant's kitchen since September 2005.

The ICE agents found job applications, W-4 documents, and I-9 forms for every employee of the Galley, except for the six aliens. The personnel files for some of the aliens contained counterfeit identity documents. An ICE agent described one of these documents at trial as a "fantasy document." The six undocumented aliens were paid

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

in cash and below the minimum wage, while all other employees were paid by check. The Galley withheld income tax and paid unemployment insurance premiums for all employees except for the six aliens.

The agents discovered that Tipton provided an apartment for the undocumented aliens. The apartment was in Tipton's name, and she paid the rent and utilities. At Tipton's request, the aliens later moved out of the apartment and rented a different place. Although one of the aliens signed the second lease, Tipton selected the apartment, completed the leasing documents, and paid the $375 deposit using her personal checking account.

On March 14, 2006, a grand jury indicted both defendants under 8 U.S.C. § 1324(a)(1)(A) for harboring illegal aliens, under 8 U.S.C. § 1324a(a)(1)(A) for hiring unauthorized aliens, and under 18 U.S.C. § 371 for conspiring to hire and harbor illegal aliens. After a joint trial, a jury found both defendants guilty on all three counts, and the district court sentenced Seferi to 30 months' imprisonment and Tipton to 27 months' imprisonment. In calculating the advisory guidelines range, the court applied a specific offense characteristic under USSG § 2L1.1(b)(2)(A) for harboring six or more unlawful aliens, and increased each defendant's offense level under USSG § 3B1.4 on the ground that the defendant used a minor to commit the offense.

II.

A.

In reviewing the appellants' challenge to the sufficiency of the evidence, we consider the record in the light most favorable to the verdict. We inquire whether a jury reasonably could find proof beyond a reasonable doubt of the charged offenses. *United States v. Red Bird*, 450 F.3d 789, 791 (8th Cir. 2006).

Tipton and Seferi argue that there was insufficient proof to show that they violated 8 U.S.C. § 1324a(a)(1)(A), which makes it unlawful to hire an alien for employment in the United States while knowing that the alien is an "unauthorized alien." An unauthorized alien is one who is not either lawfully admitted to the United States for permanent residence, or authorized by law to be employed in the United States. 8 U.S.C. § 1324a(h)(3).

We conclude that the evidence presented at trial was adequate to support the convictions of both defendants on this charge. There is no dispute that the six aliens were unauthorized within the meaning of the statute, and there was sufficient evidence from which a jury reasonably could infer that Tipton and Seferi knew that the aliens were unauthorized. Rather than hire these aliens based on a job application and interview, Seferi hired three of them at a truck stop without a job application, form of identification, or employment verification form. Tipton and Seferi treated the six aliens differently than they treated employees legally in the United States: they withheld no federal income tax from the aliens' wages, made no contribution to unemployment insurance on their behalf, and paid them in cash at a rate far below the minimum wage. Seferi drove the aliens to and from work from an apartment that Tipton maintained for them. These circumstances adequately support an inference that Tipton and Seferi knew the aliens were unauthorized.

We also conclude that the evidence is sufficient to support the appellants' convictions for harboring illegal aliens. The statute makes it unlawful to "harbor" an alien, knowing or in reckless disregard of the fact that the alien has come to, entered, or remained in the United States in violation of the law. 8 U.S.C. § 1324(a)(1)(A)(iii). Harboring means any conduct that "substantially facilitate[s] an alien's remaining in the United States illegally." (R. Doc. 52, Jury Instruction 14); *United States v. Rubio-Gonzales*, 674 F.2d 1067, 1073 (5th Cir. 1982). A jury reasonably could conclude that Tipton and Seferi harbored these aliens by granting them employment, by providing the aliens a place to live, daily transportation, and money to purchase

necessities, and by maintaining counterfeit immigration papers for each alien. *See United States v. Sanchez*, 963 F.2d 152, 155 (8th Cir. 1992); *United States v. Kim*, 193 F.3d 567, 574-75 (2d Cir. 1999). The same evidence that supported a finding that Tipton and Seferi knew the aliens were unauthorized for employment also furnished an adequate basis for the jury to conclude that the appellants knew or recklessly disregarded the fact that the aliens were unlawfully in the country.

The government also presented sufficient evidence to support the conspiracy conviction. The offense of conspiracy as charged in this case requires that the defendants knowingly reached an agreement or understanding either to hire unauthorized aliens or to harbor them, and that at least one defendant took an act in furtherance of the conspiracy. *See* 18 U.S.C. § 371; *United States v. Bertling*, 510 F.3d 804, 808 (8th Cir. 2007). There was sufficient circumstantial evidence of an agreement or understanding between Tipton and Seferi. The Galley restaurant was run as a joint enterprise. Tipton and Seferi resided together, and divided equally the duties and profits of the restaurant. Tipton ran the dining room and kept the restaurant's books. Seferi hired, paid, and managed the kitchen staff, including the six aliens. Tipton maintained an apartment for the aliens from which Seferi transported them to work at the restaurant. A reasonable jury thus could have concluded that the two defendants had formed an agreement with respect to hiring and harboring the undocumented aliens. Once the jury found the requisite agreement, any of the several acts discussed above satisfied the element of an overt act in furtherance of the agreement.

B.

Tipton also appeals her sentence, arguing that the district court erroneously calculated the advisory guidelines range. In particular, she challenges the district court's application of a specific offense characteristic under USSG § 2L1.1(b)(2)(A)

for harboring six or more unlawful aliens, and the court's increase of her offense level under USSG § 3B1.4 for use of a minor to commit the offense.

A specific offense characteristic applies, resulting in an increase of three offense levels, where an offense involves the "harboring of six or more unlawful aliens." USSG § 2L1.1(b)(2). The district court found that Tipton harbored six unlawful aliens, and this finding was not clearly erroneous. Four unlawful aliens were living at the apartment that Tipton rented for use by Galley workers. Seferi identified two additional aliens who were detained at the apartment as workers in the Galley kitchen. All six aliens were paid in cash below minimum wage, with no taxes withheld, and with payment recorded on a separate log apparently reserved for unlawful aliens. This evidence was sufficient to support the district court's finding that Tipton intended to harbor six unlawful aliens.

The advisory sentencing guidelines also provide that the defendant's offense level shall be increased by two levels if she "used or attempted to use a person less than eighteen years of age to commit the offense." USSG § 3B1.4. The enhancement applies even if the defendant does not know that the persons used are minors. *United States v. Voegtlin*, 437 F.3d 741, 748 (8th Cir. 2006). In the district court, Tipton disputed the application of this provision on the ground that none of the six undocumented aliens was younger than eighteen years old. The district court found, however, that two of the aliens were minors, and we conclude that the finding was not clearly erroneous. One alien, J.L., testified at trial that he was only seventeen years old. At sentencing, an ICE agent testified that the statements and appearance of another alien who worked at the Galley established that this alien, R.V., was about fourteen years of age. This evidence was sufficient to support the district court's finding.

Tipton argues for the first time on appeal that § 3B1.4 does not apply, even if the aliens were minors, because Tipton did not "use" or "attempt to use" them in

committing the offense. The application note to § 3B1.4 states that "use or attempted use" of a minor includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG § 3B1.4, comment. (n.1). Consistent with that listing, we have said that "the unambiguous legislative design of section 3B1.4 is to protect minors as a class from being 'solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used' to commit crime." *United States v. Paine*, 407 F.3d 958, 965 (8th Cir. 2005) (internal quotation omitted).

Tipton contends that there was "no particular advantage" in employing minors rather than adults, that the minors were not used as "a cover for employing illegal aliens," and that the minors were not used to escape apprehension for the offense. She relies on *United States v. Parker*, 241 F.3d 1114, 1120 (9th Cir. 2001), for the proposition that a minor's "mere participation" in a crime is not sufficient to trigger application of § 3B1.4, and that the government must show the defendant "acted affirmatively to involve the minor in the crime." This argument was not advanced at sentencing, and the district court did not address it. We thus review the claim on appeal under a plain error standard. *See United States v. Olano*, 507 U.S. 725 (1993).

We see no basis for relief. Tipton did act affirmatively to involve the minors in the offense. She hired them and harbored them. The plain language of the guideline encompasses use of a minor, regardless of special advantage to the defendant. The purpose of the enhancement – "to protect minors as a class" – is served by punishing the use of minors whether or not there was a comparative advantage in using minors rather than adults. It is not plain to us that these minor aliens were not "used" to commit the offense within the meaning of § 3B1.4, given that "use" includes recruitment, that the employees were necessary to commission of the offense, and that the minor aliens were hired by Tipton and Seferi for employment at the restaurant without legal authorization to work in the United States. Accordingly, we conclude that the district court made no plain error warranting relief.

\*      \*      \*

For the foregoing reasons, we affirm the judgment of the district court.

_____