# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1561

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Karlin Kelley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 20, 2009
Filed: February 12, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Karlin Kelley was adjudicated guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Kelley challenges the district court's[1] denial of his motions to suppress evidence and for a judgment of acquittal. We affirm.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

## I. Background

On March 26, 2005, Sergeant Jim Stanley of the Greene County, Missouri Sheriff's Department apprehended and questioned Todd Gerhardt and Jay Little in connection with a string of burglaries near Springfield, Missouri. Burglars had stolen firearms, among other items, in two of the burglaries. Gerhardt and Little acknowledged their involvement in the burglaries and stated that several of the stolen firearms were in the possession of Karlin Kelley, the Defendant-Appellant. Little assisted Sergeant Stanley's investigation by calling Kelley's residence. Little's sister, Tanya Little ("Tanya"), who lived with Kelley, answered the phone. Tanya knew about the firearms, according to Little. Sergeant Stanley took the phone from Little, identified himself, and told Tanya that he wanted to retrieve the firearms without anyone getting hurt. In the background, Sergeant Stanley heard a male voice, which turned out to be Kelley, say, "Am I going to jail?" Sergeant Stanley told Tanya to tell Kelley he would not be going to jail that night if he cooperated. Kelley said, "tell him come on out and get them," and Tanya invited Sergeant Stanley to her residence. Sergeant Stanley told Tanya to meet him in the driveway, where Sergeant Stanley met her along with three other officers from the Sheriff's Department.

Sergeant Stanley and the other officers followed Tanya into the house, where Kelley was seated. Sergeant Stanley told Kelley that he was at the residence to get the firearms. Kelley signed a written consent form authorizing Sergeant Stanley to search his house. Further, Kelley told Sergeant Stanley that he knew where the firearms were. Then, Kelley took Sergeant Stanley to a shed on his property, opened the door, and pointed to two plastic boxes, which contained two shotguns and a rifle. Sergeant Stanley stepped inside and collected the items as evidence.

Three days later, Kelley met with Sergeant Stanley for a formal interview. After Sergeant Stanley advised Kelley of his Miranda[2] rights, Kelley stated that Little brought the firearms to his residence for hunting purposes. Kelley also said that he took the firearms out to the shed because he was not supposed to have firearms in the house due to his prior felony conviction. Finally, Kelley signed a "voluntary statement" regarding Sergeant Stanley's investigation, in which he stated, "Todd and Jay brought some guns out to my house to do some hunting. I let them have them there till a day that we could hunt without the kids there."

On August 31, 2007, a federal grand jury indicted Kelley on counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of stolen firearms, in violation of 18 U.S.C. § 922(j). Kelley moved to suppress the evidence collected from his shed and the statements made to Sergeant Stanley as fruits of an unlawful search. Kelley alleged that Sergeant Stanley threatened Tanya by stating that he did not want "another Waco" and that he did not want someone else to raise her children. After a hearing, the magistrate judge[3] recommended denying Kelley's motion to suppress, finding that Tanya's consent was voluntary and that Kelley voluntarily led Sergeant Stanley to the shed containing firearms. The district court adopted the magistrate's findings and denied Kelley's motion to suppress.

During a two-day bench trial, the only contested issue was whether Kelley knowingly possessed the firearms.[4] At the close of the Government's case, Kelley moved for a judgment of acquittal, arguing that the Government did not establish knowing possession of a firearm, which is an element of both of the charged crimes.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[3]The Honorable James C. England, Chief United States Magistrate Judge for the Western District of Missouri.

[4]Kelley stipulated at trial that he had been convicted of a felony offense and that the firearms seized from the shed had traveled in interstate commerce.

The district court denied that motion, and found Kelley guilty of being a felon in possession of a firearm and not guilty of possession of a stolen firearm. On January 20, 2009, the district court sentenced Kelley to 180 months' imprisonment followed by three years' supervised release. In this appeal, Kelley challenges the district court's failure to grant his motion to suppress and motion for acquittal. We address each alleged error in turn.

## II. Motion to Suppress

Kelley challenges both the voluntariness of Tanya's consent to search and Sergeant Stanley's execution of the search. "We 'must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" United States v. Comstock, 531 F.3d 667, 675–76 (8th Cir.), cert. denied, 129 S. Ct. 590 (2008) (quoting United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008)).

Kelley contends that consent to search his property was not voluntary because it was procured by threats and coercion. It is fundamental that the Fourth Amendment does not prohibit a warrantless search of a residence where police obtain a resident's voluntary consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Whether consent was given voluntarily is a factual question, which we review for clear error. Comstock, 531 F.3d at 676. We consider the totality of the circumstances, "including 'both the characteristics of the accused and the details of the interrogation.'" United States v. Chaidez, 906 F.2d 377, 380–81 (8th Cir. 1990) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

It is undisputed that Tanya invited Sergeant Stanley into her house and that Kelley gave written consent for Sergeant Stanley to search the house. Kelley alleges that Sergeant Stanley procured Tanya's consent to enter the property by making three threatening statements to Tanya: (1) that he did not want anyone to get hurt, (2) that

he did not want "another Waco," and (3) that he did not want anyone else raising her children.  At a hearing before the magistrate judge, Tanya testified that these statements scared her and that she was startled when she arrived at her home and saw three police cars in her driveway.  However, Tanya also testified that she would have allowed Sergeant Stanley to search her property regardless of the alleged threats.  In other words, Tanya admitted that Sergeant Stanley's alleged threats did not *cause* her to consent to the search.  Having reviewed Tanya's testimony at the suppression hearing, we find no clear error in the district court's determination that Sergeant Stanley's alleged threats did not render Tanya's consent involuntary.[5]  Moreover, we agree with the district court that the mere presence of several police cars and four officers outside Kelley's home was insufficient to call into question the voluntariness of Tanya's consent to search.  See United States v. Barnum, 564 F.3d 964, 970 (8th Cir. 2009) (holding that the presence of two armed officers is not enough to negate consent without threats or physical intimidation); United States v. Va Lerie, 424 F.3d 694, 710 (8th Cir. 2005) (same).

Alternatively, Kelley argues that Sergeant Stanley exceeded the scope of the consents to search.  Kelley contends that the consents were limited to the house and that Sergeant Stanley did not obtain consent to search the shed, where the weapons were found.  "We measure the scope of consent to search by a standard of objective reasonableness."  United States v. Siwek, 453 F.3d 1079, 1085 (8th Cir. 2006).  To be sure, the evidence in the record shows that Tanya's verbal consent and Kelley's written consent were limited to the house.  However, the magistrate judge found that Kelley "led [Sergeant] Stanley out to the shed where the guns were located."  Sergeant Stanley testified that "Kelley told [him] he knew where the firearms were, took [him] out to the

---

[5]Additionally, the magistrate judge commented that the alleged threat about Tanya's children seemed "highly incredible" and that the alleged threat about "another Waco" also seems suspect.  Even if we were to disagree with the magistrate and credit Tanya's testimony, we cannot conclude that her consent was procured by the alleged threats, i.e., that she would not have consented *but for* the alleged threats.

shed on his property, opened the door, [and] pointed to them." We have no doubt that a "typical reasonable person" would understand Kelley's words and actions as consent to search the shed. See id. Moreover, we find no clear error in the district court's conclusion that Kelley's consent to search the shed was voluntary. For these reasons, we affirm the district court's denial of Kelley's motion to suppress.

### III. Motion for Judgment of Acquittal

Kelley argues that the district court should have granted his motion for a judgment of acquittal because the Government did not establish knowing possession of a firearm. In reviewing the district court's denial of a motion for acquittal, we view the evidence "in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence." United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007). Reversal is warranted "only if no reasonable [factfinder] could have found the defendant guilty beyond a reasonable doubt." Id.

"Knowing possession can be actual or constructive, as well as sole or joint." United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). Stated differently, "constructive possession 'requires knowledge of an object, the ability to control it, and the intent to do so.'" United States v. Howard, 427 F.3d 554, 557 (8th Cir. 2005) (quoting United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003)).

In support of his motion for acquittal, Kelley points to his own testimony that he rented the shed to others, that he told Little and Gerhardt to remove the firearms immediately after he saw them, and that he did not know the firearms were in the shed until Little called his house on March 26, 2005. However, Kelley overlooks nearly all of the evidence supporting his conviction. For example, Sergeant Stanley testified that

-6-

(1) Kelley said he knew the firearms were in the shed; (2) Kelley said he hid the firearms in the shed; (3) Kelley led Stanley to the shed, opened the door, and showed him the boxes in the shed; (4) Kelley told Sergeant Stanley that the boxes in the shed contained firearms; (5) Kelley later said that he personally "had carried [the firearms] out [to the shed] and placed them in the boxes to protect them"; (6) Kelley said that the firearms were wrapped in blankets when they arrived; and (7) Kelley owned the boxes that contained the firearms. Furthermore, Kelley signed a "voluntary statement" that contradicts his position that he was unaware of the firearms. He stated, "Todd and Jay brought some guns out to *my house* to do some hunting. *I let them have them there* till a day that we could hunt without the kids there." (emphasis added) Lastly, Kelley admitted at trial that he knew the guns were in his shed. Given this proof, we conclude that there was enough evidence in the record to support Kelley's conviction. Our standard of review forbids us from re-weighing the evidence presented at trial, which is, in essence, what Kelley asks the Court to do. See United States v. Parker, 587 F.3d 871, 880 (8th Cir. 2009).[6]

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

_____

[6]Mr. Kelley filed a pro se brief challenging the sentence imposed in this case. Although we do not normally consider pro se briefs in counseled cases, we have independently reviewed the sentencing record and find that Mr. Kelley was properly sentenced as an armed career criminal.