# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1456

_____

United States of America,    *
              *
    Plaintiff-Appellee,  *  Appeal from the United States
              *  District Court for the
  v.           *  Northern District of Iowa.
              *
Cory Pazour,       *  [PUBLISHED]
              *
    Defendant-Appellant. *

_____

Submitted: June 14, 2010
Filed: June 22, 2010

_____

Before BYE, CLEVENGER,[1] and COLLOTON, Circuit Judges.

_____

PER CURIAM.

A grand jury indicted Cory Pazour for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pazour pleaded guilty to the offense as charged and the district court[2] sentenced Pazour to 37 months imprisonment. On appeal, Pazour argues the district court erred in applying a two-level sentencing enhancement for possession of a stolen firearm, see U.S.S.G.

_____

[1]The Honorable Raymond C. Clevenger, III, Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

§ 2K2.1(b)(4)(A), and a four-level sentencing enhancement for possession of a firearm in connection with another felony, see U.S.S.G. § 2K2.1(b)(6).  We affirm.

I

The Presentence Report reveals the following undisputed facts.  Pazour, a convicted felon, was holding three firearms (a Savage Model 110E .223 caliber rifle, a Benelli Super Black Eagle 12 gauge shotgun, and a Remington 870 20 gauge youth shotgun) in his home for a friend who owned the firearms.  On January 6, 2009, Pazour pawned, without his friend's permission, the .223 caliber rifle and the 12 gauge shotgun at the Mister Money in Cedar Rapids, Iowa.  Pazour later pawned the 20 gauge shotgun at Marion Guns and Gold.  Later, when Pazour's friend wanted to reclaim the firearms, all three were missing.  A grand jury indicted Pazour for being a felon in possession of firearms, to which Pazour pleaded guilty.

Based on the Presentence Report, to which neither party objected, the district court determined Pazour had an initial base offense level of 14 as recommended pursuant to U.S.S.G. § 2K2.1(a)(6)(A).  The district court applied U.S.S.G. § 2K2.1(b)(1)(A), which increases the offense level by two levels for offenses involving between three and seven firearms[3],  U.S.S.G. § 2K2.1(b)(4)(A), which increases the offense level by two levels if the firearms are stolen, U.S.S.G. § 2K2.1(b)(6), which increases the offense level by four levels if any firearm is possessed in connection with another felony offense, and U.S.S.G. § 3E1.1(a), which reduces the offense level by three levels if the defendant accepts responsibility.  Applying these enhancements resulted in a total offense level of 19.  With Pazour's criminal history category of II, the district court calculated an advisory guidelines

---

[3]The indictment alleged that Pazour possessed only two firearms; however, the Presentence Report suggested an enhancement for the offense involving three firearms.  Pazour does not challenge the application of this enhancement on appeal.

range of 33-41 months imprisonment. The district court sentenced Pazour to 37 months imprisonment.

On appeal, Pazour argues the district court erred in applying the enhancements under U.S.S.G. § 2K2.1(b)(4)(A) and § 2K2.1(b)(6). Since Pazour did not object to these enhancements at sentencing, this court reviews for plain error. United States v. Tipton, 518 F.3d 591, 597 (8th Cir. 2008); see also United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003). This court may correct an error not raised at the district court when the appellant demonstrates (1) there is an error; (2) the error is clear and obvious, rather than subject to reasonable dispute; (3) the error affects his substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Puckett v. United States, 129 S.Ct. 1423, 1429 (2009).

II

Pazour argues the application of U.S.S.G. § 2K2.1(b)(4)(A), for possession of stolen firearms, was erroneous because the firearms were not stolen when he held them at his friend's request. Rather, according to Pazour, the firearms only became stolen when he pawned the firearms without permission, at which point he no longer possessed the firearms. The government responds, arguing that the firearms became stolen at an earlier point in time, specifically, as Pazour took the firearms to the pawn shop to use as collateral for a loan. Alternatively, the government argues Pazour retained constructive possession after he pawned the guns, because of his right to repay the loan and retrieve the guns.

The Sentencing Guidelines § 2K2.1(b)(4)(A) provides that "if any firearm is stolen, increase by two levels." The Guidelines do not define the term "stolen." In United States v. Bates, this court determined the term stolen in § 2K2.1(b)(4) "includes all felonious or wrongful takings with the intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes

common law larceny." 584 F.3d 1105, 1109 (8th Cir. 2009). In doing so, we imported the construction which the Supreme Court gave the same term in the National Motor Vehicle Theft Act, 18 U.S.C. § 2312. Id. at 1108-09; see also United States v. Turley, 352 U.S. 407, 417 (1957). Standing alone, the definition provides little guidance in determining whether Pazour stole the firearms when he pawned them, or, as the government argues, whether he stole them at an earlier point in time. A review of our prior case law is similarly of limited help in this case. Unexceptionally, this court has upheld the application of the § 2K2.1(b)(4)(A) two-level enhancement when the firearm was stolen and subsequently possessed. See United States v. Hedger, 354 F.3d 792 (8th Cir. 2004) (applying enhancement when firearm was reported stolen and defendant was later found with firearm); United States v. Kenney, 283 F.3d 934 (8th Cir. 2002) (applying enhancement when defendant removed firearms from parents' home without permission and later pawned firearms); United States v. Hawkins, 181 F.3d 911 (8th Cir. 1999) (applying enhancement when defendant acquired stolen guns through burglary). Neither party cites to, and the court's own research has failed to uncover, an instance of the enhancement being applied, or rejected, on the theory that a borrowed firearm becomes stolen when the defendant begins the process of pawning the firearm.

We are also without clear precedent with respect to the government's alternative argument that Pazour maintained possession after the firearms were pawned. Constructive possession of a firearm is established when a person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. United States v. Kelley, 594 F.3d 1010, 1014 (8th Cir. 2010) (quoting United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993)). Stated differently, constructive possession generally requires knowledge of an object, the ability to control it, and the intent to do so. United States v. Lee, 356 F.3d 831, 837 (8th Cir. 2003). In prior cases, we have upheld the application of the enhancement under § 2K2.1(b)(4)(A) where the defendant's dominion or control was sufficient to support a finding of constructive possession. See, e.g., United States v. Kelley, 594 F.3d 1010

(8th Cir. 2010) (applying enhancement when firearms were found in shed on defendant's property); United States v. Lee, 356 F.3d 831 (8th Cir. 2003) (finding constructive possession where the defendant was able to direct officers to the drugs); United States v. Lemon, 239 F.3d 968 (8th Cir. 2001) (holding that being present in another's residence, with key to residence, and with contraband in personal coat was sufficient for constructive possession); United States v. Surratt, 172 F.3d 559 (8th Cir. 1999) (finding constructive possession where the contraband was found inside residence of defendant); United States v. Brett, 872 F.2d 1365 (8th Cir. 1989) (possessing key to home where drugs were present was sufficient for constructive possession).

These cases and others provide limited guidance here because, in our view, the degree of control Pazour exercised over the firearms after he pawned them is much more limited when compared to the degree of control exercised by defendants in cases where this court determined constructive possession exists.[4] Pazour's control over the

---

[4]State v. Bennett, No. 23516-1-II, 2000 WL 60031 (Wash. App. Jan. 14, 2000) (unpublished opinion) does lend some support to the government's theory of constructive possession. In Bennett, the defendant argued on appeal that the evidence was insufficient to prove he ever possessed the firearms, either before or after the defendant and his brother pawned the firearms. Id. at *2. The Washington Court of Appeals held the evidence was sufficient to find possession. The court stated in its reasoning: "Bennett accompanied his brother and the firearms into the pawnshops, whether he actually handled the weapons or not. He signed the pawn slips and received money in exchange for the firearms. His presence was required before they could be redeemed." Id. Based on the final reason stated, the defendant's right to redemption, Bennett could be read to imply that the defendant constructively possessed the firearms after he pawned them, although the opinion only necessarily holds that the evidence was sufficient to prove that the defendant possessed the guns at some point, either before or after he pawned them.

In light of our ultimate holding that the district court did not clearly and obviously err in imposing the enhancement under § 2K2.1(b)(4)(A), we take no position today on whether we agree with Bennett or ultimately whether Pazour

firearms was limited by factors such as his ability to repay the loan, the operating hours of the pawn shop, and terms of the pawn.

Returning to the broader question of the applicability of § 2K2.1 (b)(4)(A) to this case, we need not pass judgment today on the parties' competing interpretations of when Pazour stole the guns, and when, if ever, Pazour was dispossessed of them. Under plain error review, it is enough that the Sentencing Guidelines and our prior caselaw do not supply a clear answer, and that Pazour's claim of error is at least "subject to reasonable dispute." See Puckett, 129 S. Ct. at 1429; see also United States v. Sickinger, 179 F.3d 1091, 1093 n.3 (8th Cir. 1999) (finding no plain error on the grounds that defendant could not show that any district court error was "clear and obvious"); see also United States v. Olano, 507 U.S. 725, 734 (1993) ("plain" is synonymous with "clear" or "obvious"; at minimum, court of appeals cannot correct error under plain-error rule unless error is clear under current law); United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) (noting that when explicit language of statute or rule does not specifically resolve issue, there can be no plain error where there is no precedent from Supreme Court or appeals court directly resolving it). Because our review of the Sentencing Guidelines and relevant precedent did not uncover any authority clearly and obviously supporting Pazour's position, and because at least one case arguably supports the government's position, see Bennett, 2000 WL 60031, we conclude the district court did not commit plain error in applying the two-level enhancement under § 2K2.1(b)(4)(A).

III

Pazour next argues he did not possess the firearms in connection with the felony offense of theft (Iowa Code § 714.1) because when the theft occurred he no longer possessed the firearms. Additionally, Pazour argues that this court has never applied

constructively possessed the firearms after he pawned them.

an enhancement under U.S.S.G. § 2K2.1(b)(6) where the felon no longer possessed the firearm.

Under U.S.S.G. § 2K2.1(b)(6), a four-level enhancement is recommended when the defendant used or possessed any firearm or ammunition in connection with another felony offense. In United States v. Regans, this court stated that "in connection with" means the firearm must have some purpose or effect with respect to, and must facilitate or have the potential of facilitating, another felony offense and the firearm's presence or involvement cannot be the result of accident or coincidence. 125 F.3d 685, 686 (8th Cir. 1997).

It is clear the firearms became stolen when Pazour pawned them. See Iowa Code § 714.1(2) ("A person commits theft when the person . . . [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property . . . ."). This court has applied the four-level enhancement in cases involving a firearm possession crime and another felony offense "through which the weapon was obtained." See United States v. Hedger, 354 F.3d 792, 795 (8th Cir. 2004) (applying enhancement for stealing firearm from gun shop); United States v. Kenney, 283 F.3d 934, 937-39 (8th Cir. 2002) (applying enhancement for burglary of firearms from parents' home). In this case, even though the firearms were not obtained through the felony offense, the firearms became stolen, like the firearms in Hedger, through the felony theft. More importantly, the firearms facilitated the theft because without Pazour's possession of the firearms, he would not have been able to steal the firearms by pawning them–in other words, like in Kenney and Hedger, the firearms facilitated the theft because the firearms were the stolen articles of the theft itself. Therefore, we agree with the district court that the firearms facilitated the theft, and possession of the firearms was not accident or coincidence. Regans, 125 F.3d at 686. Thus, we conclude the district

court did not err in applying the enhancement under U.S.S.G. § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense.

IV

Accordingly, we affirm.

_____