**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4510**

_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

      v.

JOSHUA GERALD LARRIMORE,

                Defendant – Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., Chief District Judge.  (1:12-cr-00364-WO-1)

_____

Argued: September 19, 2014         Decided: November 24, 2014

_____

Before DIAZ and THACKER, Circuit Judges, and Paul W. GRIMM, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.  Judge Diaz wrote a dissenting opinion.

_____

**ARGUED:** John Archibald Dusenbury, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Andrew Charles Cochran, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joshua Gerald Larrimore ("Appellant") challenges his sentence of 74 months' imprisonment, imposed as a result of his pleading guilty to a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for unlawful possession of a firearm. Appellant argues the district court erred by concluding Appellant possessed a firearm in connection with a larceny for purposes of the four-level enhancement authorized by the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G."). See U.S.S.G. § 2K2.1(b)(6)(B). Because the firearm at issue was the object of the larceny, we likewise conclude Appellant possessed the firearm in connection with the larceny. Accordingly, we affirm Appellant's sentence.

I.

A.

On July 5, 2012, Appellant reported a housebreaking in the home he shared with his mother and her boyfriend, Vernon Britt. When a Winston-Salem Police Department officer responded to a housebreaking call, Appellant claimed someone had broken into the house and pried open Britt's gun safe.[1] Shortly thereafter, the officer searched the gun safe, where he found

---

[1] The presentence investigation report referred to the safe specifically as a gun safe. Neither party objected to this characterization.

3

six firearms.  The officer then called Britt and described the firearms; Britt confirmed that six firearms were kept in the gun safe.  Both Britt and Appellant gave permission for the gun safe to be dusted for fingerprints.  Appellant offered that he had tried to repair the gun safe, so his prints would be found, and that one of his brothers was likely responsible for the housebreaking.  The officer then began to canvas the neighborhood.

Upon returning to the house, the officer went back to the gun safe and noticed that five -- not six -- firearms remained in the gun safe.  A .38-caliber Smith & Wesson revolver had vanished.  Although he had been the only person in the house at the time the firearm disappeared, Appellant denied any knowledge of what had happened to the now-missing firearm.  Ultimately, Appellant admitted he hid the firearm under a vehicle in the backyard.  He claimed he did so in an effort to protect his stepbrother, who Appellant alleged used the firearm to commit a murder.  The firearm was subsequently recovered.

Having agreed to an interview with detectives, Appellant proceeded to the police station, where he admitted he broke into the gun safe.  He also admitted he later took the firearm and hid it with the intent of selling it later.  The tale of his murderous stepbrother was mere fiction.

4

Appellant had previously been convicted of felony attempted armed robbery on June 11, 2008; his right to possess firearms had not been restored as of July 5, 2012. On October 29, 2012, a federal grand jury returned a single-count indictment, charging Appellant with unlawful possession of a firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On February 4, 2013, Appellant pled guilty as charged.

B.

Before sentencing, the United States probation officer completed a presentence investigation report ("PSR"). The PSR calculated Appellant's base offense level under section 2K2.1 of the Sentencing Guidelines as 20. A two-level enhancement was added because the firearm was stolen and a four-level enhancement was added because the firearm was possessed in connection with another felony (i.e., felony safecracking). See U.S.S.G. § 2K2.1(b)(4)(A), (b)(6)(B). After applying a three-point reduction for acceptance of responsibility, the PSR set Appellant's total offense level at 23. Id. § 3E1.1(a) (accepting of responsibility); id. § 3E1.1(b) (assisting authorities). The offense level, considered in combination with Appellant's applicable criminal history category of IV, resulted in a Sentencing Guidelines range for imprisonment of 70 to 87 months.

Prior to and during the sentencing hearing, Appellant objected to the application of the four-level enhancement for possession of a firearm in connection with another felony. Appellant argued he did not possess the firearm during the commission of the safecracking; rather, he argued, the firearm was taken after this felony was completed.

At the May 31, 2013, sentencing hearing, the district court applied the four-level enhancement -- but not because Appellant possessed the firearm in connection with felony safecracking. The district court concluded the safecracking statute only related to "essentially the unlawful opening of the safe." J.A. 99.[2] Therefore, because the safecracking felony was complete when the safe was opened, the district court concluded the facts did not support the recommended enhancement on that basis.

The district court nonetheless concluded that the application of the enhancement was, instead, predicated on felony larceny of the firearm. The district court noted that facilitation, for purposes of section 2K2.1(b)(6)(B), includes circumstances when "the theft could not have occurred without the actual taking of the firearm" and when the firearm could

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

provide assistance in escaping. J.A. 98. Because Appellant took possession of the firearm as part and parcel of the larceny, the district court applied the recommended four-level enhancement.

After considering the Sentencing Guidelines, as well as the factors set forth in 18 U.S.C. § 3553(a), the district court imposed a sentence of 74 months' imprisonment, a sentence at the lower end of the advisory guidelines. Discussing the enhancements, the district court explained,

> [these] adjustments, collectively, result in a significant increase in [Appellant's] guideline range while at the same time perhaps this does not reflect some of the more serious iterations or variations that might support [these] adjustments, and, therefore, I find that a sentence of 74 months is sufficient but not greater than necessary.

J.A. 123.

Appellant timely appealed. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

When reviewing a district court's application of the Sentencing Guidelines, factual findings are reviewed for clear error and legal conclusions are reviewed de novo. See United States v. Adepoju, 756 F.3d 250, 256 (4th Cir. 2014). "Where a [Sentencing] Guidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the

7

circumstances at issue. If the application is 'essentially factual,' we apply the clearly erroneous standard." Id. (quoting United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989)).

## III.

The applicable section of the Sentencing Guidelines for a conviction pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) is section 2K2.1. Because Appellant committed the offense at issue after sustaining a felony conviction for a crime of violence, his base offense level was 20. U.S.S.G. § 2K2.1(a)(4)(A). Section 2K2.1 also outlines various specific offense characteristics that may be applied to increase the offense level. Id. § 2K2.1(b). At issue here is the four-level enhancement that applies in cases where an individual "used or possessed any firearm or ammunition in connection with another felony offense." Id. § 2K2.1(b)(6)(B). Accordingly, this appeal turns on the definition of "in connection with" as it is used in section 2K2.1(b)(6)(B).[3] The Sentencing Guidelines

---

[3] The Government also asserted in its brief and at argument that application note 14(B) of section 2K2.1 compels a four-level enhancement because burglary and safecracking are similar offenses. Application note 14(B) permits a four-level enhancement pursuant to section 2K2.1(b)(6)(B) "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm" and "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. (Continued)

8

generally note that this enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." Id. § 2K2.1 cmt. n.14(A).

As the district court concluded, in this case the nexus between the firearm and the larceny is sufficient because the firearm was the fruit of the larceny; in other words, "the theft could not have occurred without the actual taking of the firearm." J.A. 98. Facilitation and the phrase "in connection with" are not narrowly construed to encompass only those circumstances where a firearm emboldens an individual or is used for protection. Instead, these concepts are expansive. Smith v. United States, 508 U.S. 223, 237–38 (1993).[4] The district court's decision that these concepts extend to those instances where a firearm is the fruit of a felony offense -- where it is the object of the offense -- comports with our jurisprudence and was not, therefore, erroneous.

---

§ 2K2.1 cmt. n.14(B). Because we affirm the district court's decision to apply the enhancement due to the larceny but not the safecracking, we need not reach this issue.

[4] The relevant language in Smith was "in relation to," but "when interpreting 'in connection with,' we continue to treat the phrases as synonymous and to rely on our cases interpreting 'in relation to.'" United States v. Jenkins, 566 F.3d 160, 162 n.2 (4th Cir. 2009).

9

We have held that a firearm is used "in connection with" another felony where it facilitates, or has some purpose or effect, in relation to the underlying felony and when its presence is neither coincidental or accidental. United States v. Blount, 337 F.3d 404, 411 (4th Cir. 2003).[5] We opined in Blount that the Government could have established the firearm at issue was used in connection with a burglary "by showing, for example, that the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand." Blount, 337 F.3d at 411; see also United States v. Hampton, 628 F.3d 654, 663 (4th Cir. 2010) (noting firearm was possessed in connection with another offense because the appellant "had the weapon close at hand and, more importantly . . . made multiple attempts to access it during the course of the assault").

---

[5] In Blount, we held the Government did not present any evidence that the firearm at issue was used "in connection with" the burglary committed by the appellant. Blount preceded application note 14(B) and is, therefore, partially abrogated by adoption of application note 14(B) because the note compels application of a four-point enhancement if a firearm is stolen in the course of a burglary. However, the general principle of Blount -- that is, that a firearm must have some purpose in relation to the offense and its involvement or presence cannot be mere accident or coincidence -- remains applicable in this circuit. See, e.g., Jenkins, 566 F.3d at 162-63 (relying on the general principles set forth in Blount).

These examples are not exclusive. A firearm can have purposes beyond emboldening an individual, making an escape easier, or frightening victims. Here, the firearm was itself a necessary component of the offense. To hold, therefore, that Appellant used it in connection with another felony is consistent with our reasoning in Blount that the firearm have some purpose of effect in relation to the underlying felony. Cf. United States v. Schaal, 340 F.3d 196, 198 (4th Cir. 2003) ("[A]n enhancement of four levels [was applied] because [the appellant] possessed or used at least one of the weapons in connection with another felony offense -- inter alia, the state-law breaking and entering and larceny offenses that produced the stolen weapons." (citations omitted)). The Seventh, Eighth, and Tenth Circuits have taken this position. See United States v. Marrufo, 661 F.3d 1204, 1207-08 (10th Cir. 2011) (tampering with firearm); United States v. Pazour, 609 F.3d 950, 954 (8th Cir. 2010) (theft of firearm); United States v. Wise, 556 F.3d 629, 632 (7th Cir. 2009) (presence of firearm recklessly endangered children).

As the Eighth Circuit observed in Pazour, a firearm can facilitate a larceny when the firearm is the object stolen. 609 F.3d at 954. There, the appellant was holding a rifle and two shotguns for a friend; he then pawned all three guns and was, consequently, charged with being a felon in possession of a

11

firearm.  See id. at 951.  The district court applied a four-level enhancement because the firearms were possessed in connection with a felony theft.  See id. at 954.  Although the Pazour appellant had permission to hold the firearms, "the firearms became stolen when [the appellant] pawned them."  Id. The Pazour court concluded that "without [the appellant's] possession of the firearms, he would not have been able to steal the firearms by pawning them -- in other words . . . the firearms facilitated the theft because the firearms were the stolen articles of the theft itself."  Id.

Similarly, the Tenth Circuit concluded that a firearm facilitated tampering with evidence because the firearm itself was the subject of the tampering.  See Marrufo, 661 F.3d at 1207-08.  The appellant in Marrufo was charged with possession of a firearm by a felon, and the district court applied a four-level enhancement because the appellant had tampered with evidence by hiding the firearm used in the commission of second-degree murder.  See id. at 1206.  Because New Mexico law required some variety of manipulation of evidence to prove tampering with evidence, the Marrufo court determined "it would be harder for a defendant to commit the crime of tampering with evidence . . . if he did not physically possess the evidence." Id. at 1207; see also Wise, 556 F.3d at 632 (holding that, "by carelessly leaving his loaded gun in a location accessible to

12

children," the appellant possessed a firearm in connection with felony willful endangerment offense).

In this appeal, we are presented with almost identical circumstances as those presented in Pazour and Marrufo. Here, the district court relied on Pazour and found that the other felony offense necessary for purposes of the four-level enhancement was a larceny and that the factual predicate for this offense was Appellant's theft of a firearm. Without the firearm, there was no larceny; so the firearm had a purpose or effect in relation to the felony -- it was the fruit of the crime. Because the firearm was the fruit of the crime, the district court determined possession of the firearm was "in connection with" the larceny.

Blount does not preclude the district court's conclusion because Pazour is consistent with Blount; Marrufo is likewise consistent with Blount. Pazour and Marrufo required a sufficient nexus between a firearm and a felony offense for enhancement purposes. In each case, there was a sufficient nexus because the presence or possession of the firearm was part and parcel of the felony at issue. The Pazour appellant possessed the firearm by theft, allowing him to sell it; the Marrufo appellant possessed the firearm, allowing him to tamper with it.

13

Pazour and Marrufo also recognize, as Blount mandates, that an individual's possession of a firearm cannot be a mere accident or coincidence. See Blount, 337 F.3d at 411 ("[A firearm's] presence or involvement cannot be the result of accident or coincidence." (quoting Smith, 508 U.S. at 238) (internal quotation marks omitted)). In each case, possession was purposeful. See Pazour, 609 F.3d at 954; Marrufo, 661 F.3d at 1207. Here, too, Appellant's possession of a firearm was no accident or coincidence. J.A. 95 ("[Appellant] admitted that he broke into the safe, admitted that he took the firearm and planned to sell it . . . .").

At bottom, the reasoning of the district court fulfills the requirements of Blount. The firearm had some purpose in relation to the larceny (i.e., it was the object of the larceny), and Appellant's possession was not accidental or coincidental. Accordingly, the district court did not err by applying a four-point enhancement pursuant to § 2K2.1(b)(6)(B).[6]

---

[6] We note the district court also concluded the firearm had the potential to facilitate the larceny because it could have been used to assist Appellant in escaping if he had been confronted while absconding with the firearm. Although Blount suggests there must be some intent to use a firearm to support such enhancement, it is unclear whether such a heightened showing is required in the post-Blount landscape. Compare Blount, 337 F.3d at 411 (requiring the Government to show "the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand"), with U.S.S.G. § 2K2.1
(Continued)

14

IV.

Pursuant to the foregoing, Appellant's sentence is

<u>AFFIRMED</u>.

---

cmt. n.14(A) (requiring only a finding that "the firearm or ammunition facilitated, or <u>had the potential of facilitating</u>, another felony offense" (emphasis added)).  We need not decide whether this ground is sufficient to support an enhancement because we affirm the sentence on the above-discussed grounds.

DIAZ, Circuit Judge, dissenting:

The majority concludes that when a firearm is the object of a larceny, a defendant necessarily possesses it "in connection with" that larceny for purposes of applying the four-level sentence enhancement authorized by the U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(b)(6)(B) (2013). Were I writing on a cleaner slate, I might well agree with the majority's view; indeed, at least two other circuits have adopted similar reasoning. See United States v. Marrufo, 661 F.3d 1204, 1207–09 (10th Cir. 2011); United States v. Pazour, 609 F.3d 950, 954 (8th Cir. 2010).[1] But because our circuit has resisted such a broad interpretation of the relevant Guideline and instead employs a case-by-case, fact-specific inquiry to determine whether the firearm actually or potentially facilitated the predicate crime, I respectfully dissent.

---

[1] The majority cites United States v. Wise, 556 F.3d 629 (7th Cir. 2009), as evidence that the Seventh Circuit has also adopted this reasoning. In Wise, however, the court affirmed the district court's application of an enhancement under § 2K2.1(b)(6)(B) because the defendant's possession of a firearm facilitated the felony of reckless endangerment. 556 F.3d at 632. We came to a similar conclusion in United States v. Alvarado Perez, 609 F.3d 609, 612–14 (4th Cir. 2010). In both cases, it was axiomatic that the possession of a loaded firearm had a purpose or effect with respect to the offense because the possession itself was the essence of the offense conduct. Additionally, in each of these cases, the district court's conclusion that the firearm facilitated the offense was supported by findings of fact. Neither of those circumstances is present here.

In United States v. Blount, 337 F.3d 404 (4th Cir. 2003), we contrasted our fact-driven view of the "in connection with" requirement with the broader approach employed in other circuits. Blount pleaded guilty to possession of a firearm and ammunition by a felon after he was found with ammunition on his person near the scene of a burglary. He admitted that he had also stolen a firearm in the burglary but had discarded it. On those facts, the presentence report recommended a four-level enhancement under § 2K2.1(b)(6)(B). Blount objected to the enhancement and we agreed that it was inappropriate.

Specifically, we observed that "the mere fact that a firearm was available to the defendant during commission of another crime," while sufficient to support the four-level enhancement in other circuits, would not justify the enhancement in this circuit. Blount, 337 F.3d at 410–11. Rather, "a clearer nexus between the firearm and the associated offense" is necessary to satisfy the "in connection with" requirement. Id. at 411.

We clarified that a firearm is not used "in connection with" another offense unless it facilitates the offense, meaning that it "must have some purpose or effect with respect to . . . the crime." Id. (internal quotation marks omitted). We also gave several examples of how the government might make this showing, including by demonstrating that the defendant

17

actually used the firearm to intimidate others, or that he kept it close at hand to prepare for this contingency.  Id.

Admittedly, Blount's holding with respect to burglary was abrogated by Application Note 14(B),[2] but its reasoning remains good law in this circuit for other predicate crimes.  In that regard, we have continued to require that district courts make specific findings of fact to support a conclusion that a firearm facilitated another felony.  Our decision in United States v. Hampton, 628 F.3d 654 (4th Cir. 2010), is instructive.

Hampton was involved in an altercation with police after the car in which he was a passenger was pulled over.  As Hampton struggled with an officer, he repeatedly reached for his pants pocket.  After he was subdued, the police recovered a .38 caliber revolver from his pocket.  Although there was no dispute that Hampton possessed the firearm, we nonetheless looked to his

---

[2] In Application Note 14(B), the Sentencing Commission specified two crimes in which acquiring or possessing a firearm automatically facilitates the offense for purposes of § 2K2.1(b)(6)(B): burglary and drug trafficking.  In this case, however, the underlying felonies are larceny and safecracking. The government contends nonetheless that the reach of the Note extends to these predicate offenses.  But by its plain terms, Note 14(B) applies only to the named offenses, and indeed was enacted by the Commission specifically to address a circuit split with respect to the use of a firearm "in connection with" those offenses.  U.S.S.G. app. C, amend. 691 (2011) ("Reason for Amendment").  Had the Commission intended the Note to apply to other offenses, it could have easily included them.

18

specific conduct to determine whether the firearm had a facilitative purpose or effect. Because Hampton kept the firearm "close at hand" and attempted to retrieve it multiple times during his skirmish with the police, we held that it facilitated Hampton's assault of a police officer while resisting arrest, thus warranting the enhancement. Id. at 663–64.

Hampton is representative of our case-by-case approach to the application of this particular enhancement. See, e.g., United States v. Jenkins, 566 F.3d 160, 162 (4th Cir. 2009) (making a "factual determination based on the specific circumstances of th[e] case" that the firearm potentially facilitated the defendant's drug possession because it emboldened him); see also United States v. Todd, 400 F. App'x 708, 710 (4th Cir. 2010) (unpublished) (reversing the district court's application of the enhancement because the district court "applied the wrong legal standard" by not making any findings that the firearm emboldened the defendant or was present for his protection); United States v. Blankenship, 383 F. App'x 345, 346 (4th Cir. 2010) (unpublished) (upholding the enhancement where the district court found that the defendant "was emboldened to commit the theft [of prescription medicines] and protected during its commission by the firearms"); cf. United States v. Lucas, 542 F. App'x 283, 286-88 (4th Cir. 2013)

19

(unpublished) (holding that a firearm facilitated the offense of obstruction of justice where the defendant fled from the police and hid the firearm in a freezer, which rendered the underlying offense of obstruction more dangerous).

In this case, the district court applied the enhancement because (1) the firearm was "the fruit of the theft," and (2) in any case involving possession of a firearm, the firearm "can be said to facilitate [the offense] . . . to the extent one might be confronted during the course of an escape." J.A. 98. Neither rationale supports applying the enhancement.

With respect to the district court's first reason, our circuit has never before adopted the view, articulated in Pazour, that a firearm per se facilitates a crime when it is the object of that crime. See 609 F.3d at 954. Rather, we have emphasized that mere possession of a firearm while committing another felony is insufficient to support a finding of facilitation, and that district courts must instead look to the circumstances of each case to determine whether (for example) the firearm emboldened its possessor, was kept close at hand, was used for protection, or made the other felony more dangerous. See Blount, 337 F.3d at 411. The reasoning of the Eighth and Tenth Circuits, while attractive in its simplicity, cannot be reconciled with the fact-driven inquiry mandated by our cases.

20

The district court's second rationale, which it acknowledged was "tenuous," is similarly foreclosed by Blount. In determining whether a firearm facilitated a felony, Blount teaches that we look to the actual circumstances of each case, not to hypotheticals. See id. Although the district court correctly stated that a firearm could facilitate a felony "to the extent one might be confronted during the course of an escape," it made no finding here that there was a confrontation or, for that matter, even a risk of one.

Because I would reverse the district court's decision to apply the four-level enhancement on these facts, I respectfully dissent.